## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————— )
                                                          )
**SERVICE EMPLOYEES**                                     )
**INTERNATIONAL UNION**                                   )
**NATIONAL INDUSTRY PENSION FUND**                        )
11 Dupont Circle, N.W., Suite 900                         )
Washington, DC 20036-1202                                 )
                                                          )
and                                                       )
                                                          )
**ANDREW STERN, RODERICK S. BASHIR,**                     )
**MIKE GARCIA, CHARLIE RIDGELL,**                         )
**SHARLEEN STEWART,**                                     )
**WILLIAM F. STUHLBARG, JIM BERG,**                       )
**EDWARD MANKO, JOHN J. SHERIDAN,**         )      C. A. No.
**LARRY T. SMITH, LEE CRETAROLO,**                        )
**TRUSTEES OF THE SERVICE EMPLOYEES**       )
**INTERNATIONAL UNION**                                   )
**NATIONAL INDUSTRY PENSION FUND**                        )
11 Dupont Circle, N.W., Suite 900                         )
Washington, DC 20036-1202                                 )
                                                          )
                              Plaintiffs,                 )
                                                          )
v.                                                        )
                                                          )
**TRINITY OAKLAND, INC.**                                 **)**
**d/b/a HIGH STREET CONVALESCENT**                        **)**
**HOSPITAL**                                              **)**
**d/b/a MACARTHUR CONVALESCENT**                          **)**
**HOSPITAL**                                              **)**
723 East 9th Street                                       )
Long Beach, California 90813                              )
                              Defendant.                  )
                                                          )
**Serve:**                                                **)**
Randal Kleis, Registered Agent                            )
723 East 9th Street                                       )
Long Beach, California 90813                              )
—————————————————————— )

## COMPLAINT UNDER ERISA FOR OUTSTANDING EMPLOYER CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES AND INJUNCTIVE RELIEF

### Introduction, Jurisdiction and Venue

1.      This is a civil action brought by an employee benefit plan and the trustees of an employee benefit plan pursuant to Section 502(a)(3), (d)(1) and (g)(2), and Section 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2) and 1145, and Section 301(a) of the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185(a) to collect unpaid collectively bargained contributions, interest, and liquidated damages owed by the Defendants.

2.      Jurisdiction is conferred upon this court by Section 502(e) and (f) of ERISA, 29 U.S.C. § 1132(e) and (f), and Section 301(c) of the Labor Management Relations Act of 1974, as amended, 29 U.S.C. § 185(c).  Jurisdiction also lies under 28 U.S.C. § 1331.

3.      Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because the Service Employees International Union National Industry Pension Fund is administered in this District.

### Parties

4.      Plaintiff Service Employees International Union National Industry Pension Fund ("Pension Fund")  is an employee welfare benefit plan within the meaning of Section 3(1), (2), (3) of ERISA, 29 U.S.C. §1002(1), (2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees.  The Pension Fund is and at all times material herein has been, a jointly administered trust fund established pursuant to Section

2

302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).  The Pension Fund is administered at 11 Dupont

Circle, N.W., Suite 900, Washington, D.C. 20036.

     5.       Plaintiff Trustees of the Pension Trust, Andrew Stern, Roderick S. Bashir, Mike

Garcia, Charlie Ridgell, Sharleen Stewart, William F. Stuhlbarg, Jim Berg, Edward Manko, John

J. Sheridan, Larry T. Smith, and Lee Cretarolo, are the duly authorized Trustees of the Plaintiff

Pension Fund whose duty it is to administer the Plaintiff Pension Fund for the benefit of the

participants and beneficiaries of the Plaintiff Pension Fund.  Plaintiff Trustees are fiduciaries

within the meaning of Sections 3(21)(A) and 502(a)(3), (e)(1) and (g)(2) of ERISA, 29 U.S.C.

§§ 1002(21)(A) and 1132(a)(3), (e)(1) and (g)(2), and bring this action on behalf of the Pension

Fund and the participants and beneficiaries of the Pension Fund pursuant to Section 502 and 515

of ERISA, 29 U.S.C. § 1132, 1145.

     6.       Defendant Trinity Oakland, Inc. ("Trinity") was at all times herein an "employer

in an industry affecting commerce" as defined in Sections 3(5), (9), (11), (12) and (14) of

ERISA, 29 U.S.C. §§ 1002(5), (9), (11), (12), (14), and Sections 2(2), (6) and (7) of the LMRA,

29 U.S.C. §§ 152(2), (6), and (7).

     7.       Upon information and belief, Defendant is a corporation registered in the State of

California.  Defendant Trinity Oakland Inc.'s corporate address as registered with the State of

California is 723 East 9th Street, Long Beach, California 90813.

     8.       Upon information and belief, Defendant Trinity Oakland, Inc. owns and operates

High Street Convalescent Hospital ("High Street"), located at 3145 High Street, Oakland,

California 94619, and MacArthur Convalescent Hospital ("MacArthur"), located at 309

MacArthur Boulevard, Oakland, California 94610.

Factual Background

9.    At all relevant times, Service Employees International Union Local 250 ("Local 250") was the exclusive collective bargaining agent for all eligible employees at Trinity Oakland.

10.    At all relevant times, Local 250 a/k/a Local United Healthcare Workers - West (the "Union") and the Defendant were signatories to a collective bargaining agreement.  Union and Trinity were signatories to a collective bargaining agreement for the period of April 1, 2004 through June 15, 2005.  A true, correct and complete copy of the 2004 Agreement is attached as Exhibit A to this Complaint. Union and Trinity were also signatories to a collective bargaining agreement for the period of March 11, 2006 through August 15, 2008.  A true, correct and complete copy of the 2006 Agreement is attached as Exhibit B to this Complaint.

11.    Pursuant to Section 515 of ERISA, 29 U.S.C. § 1145, employers who are obligated to make contributions to a multi-employer employee benefit plan must do so in accordance with the terms of the applicable collective bargaining agreement.

12.    In accordance with the collective bargaining agreements, the Defendant must contribute to the Pension Fund a specified amount for each hour the Defendant is obligated to pay compensation to its employees.  See Exhibit A, p. 16; See Exhibit B, p. 9.

13.    Pursuant to Section 16 of the collective bargaining agreements, contributions are due no later than the fifteenth day of the month following the month in which the covered work is performed, and all contributions must be transmitted with a remittance report. In accordance with the collective bargaining agreement, the Defendant previously submitted reports and

4

contributions to the Pension Fund.

14.     Pursuant to Section 16 of the collective bargaining agreement, Defendant is bound by the Restated Trust Agreement governing the administration of the Pension Trust ("Trust Agreement").

15.     At all relevant times, Section 3.1 of the SEIU Pension Fund's Trust Agreement provides that an employer must submit complete remittance reports to the Pension Fund with the employer's contributions. The remittance report must contain the names of each covered employee and the number of compensable hours for each employee during the reporting month. The remittance information is necessary in order for the SEIU Pension Fund to properly credit each employee with the appropriate amount of pension credit and to verify that the employer remitted the correct amount of contributions for the reported hours.  Furthermore, Section 5.1(14) of the Trust Agreement empowers the Trustees to examine the payroll records of any employer when such an examination is deemed necessary.  A true, correct and complete copy of the Trust Agreement is attached as Plaintiffs' Exhibit C.

16.     At all relevant times, the Trust Agreement and the SEIU Pension Fund's Policy for Collection of Delinquent Contributions ("Collection Policy") provide that an employer delinquent in its contribution obligations to the SEIU Pension Fund is liable for interest at the rate of ten percent (10%) per annum, liquidated damages at the rate of five percent (5%) prior to the commencement of legal action and twenty percent (20%) thereafter, and attorneys' fees and costs.  A true, correct and complete copy of the Collection Policy is attached as Plaintiffs' Exhibit D.

17.    Pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g) if judgment is entered against Defendant, Plaintiffs are entitled to an award of unpaid contributions, interest on the unpaid contributions, an amount equal to the greater of the interest on the unpaid contributions or liquidated damages provide for under the Trust Agreements or in the amount not in excess of twenty (20) percent or an amount determined by the court, reasonable attorney's fees and costs, and other legal or equitable relief as deemed appropriate by the Court.

18.    Defendant has not met its obligations under the collective bargaining agreements, in that it has failed to remit its contributions and submit its contribution reports on a timely basis. Defendant has been and continues to be delinquent in its contributions to the Pension Fund.

19.    The failure of Defendant to submit all amounts owed due threatens the SEIU Pension Fund's ability to provide benefits to the covered employees.  The Defendant's failure to pay all contributions due has caused great harm to the SEIU Pension Fund, including, but not limited to, the following: they have caused the Fund to incur collection and other expenses associated with pursuing this delinquency and unpaid contributions; they have caused a loss of the time value of the delinquent and unpaid contributions to the Fund; and they have resulted in a discrediting of the Trustees' ability to enforce obligations owed to it, which may result in other employers utilizing the same tactics.

<u>Count I</u>

20.    Plaintiffs reallege and incorporate Paragraphs 1 through 19.

21.    This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145.

22.    Section 16 of both collective bargaining agreements requires Defendant to remit contributions to the SEIU Pension Fund on behalf of all eligible bargaining unit employees.

23.    Defendant Trinity d/b/a MacArthur submitted incorrect contributions for months during the period of April 2005 through October 2007.  This has resulted in a contribution shortage in the amount of $776.95.  The total amount of contribution shortages owed for Trinity d/b/a MacArthur is $776.95.

24.    Defendant Trinity d/b/a MacArthur owes interest for its failure to submit timely reports for months during the period of January 2005 through December 2007.  The total amount of interest owed for Trinity d/b/a MacArthur is $668.42

25.    Defendant Trinity d/b/a MacArthur owes liquidated damages for its failure to submit timely reports for months during the period of January 2005 through October 2007.  The total amount of liquidated damages owed for Trinity d/b/a MacArthur is $1,491.07.

26.    Defendant Trinity d/b/a High Street owes interest for its failure to submit timely reports for months during the period of January 2005 through December 2007.  The total amount of interest owed for Trinity d/b/a High Street is $581.44.

27.    Defendant Trinity d/b/a High Street owes liquidated damages for its failure to submit timely reports for months during the period of March 2005 through October 2007.  The total amount of liquidated damages owed for Trinity d/b/a High Street is $1,287.01.

28.    Defendant Trinity d/b/a High Street has failed to remit owed reports for the months of November 2006, January 2008, and February 2008.  The contributions owed for these months remains unknown, and interest continues to accrue on these unpaid amounts.

7

29.    Defendant Trinity d/b/a MacArthur has failed to remit owed reports for the months of November 2006, January 2008, and February 2008.  The contributions owed for these months remains unknown, and interest continues to accrue on these unpaid amounts.

30.    Prior to commencing this lawsuit, the SEIU Pension Fund and its counsel have attempted to obtain the outstanding remittance forms and contributions from Defendant.   To date, Defendant has failed to comply with these repeated requests.

31.    Defendant's failure to timely pay required contributions, interest, and liquidated damages has caused irreparable harm to the Plaintiffs and their plan participants.  Injunctive relief is appropriate under Section 502(a) of ERISA; 29 U.S.C. § 1132(a)(3)(A).

**WHEREFORE,** Plaintiffs respectfully pray that the Court:

1.    Declare that Defendant Trinity Oakland, Inc. is delinquent in remitting its reports and contributions to the SEIU Pension Fund pursuant to the relevant collective bargaining agreements.

2.    Order Defendant to remit all outstanding remittance reports and contributions for the months of November 2006, January 2008, and February 2008, as well as any reports due at the time of judgment for both locations of Trinity Oakland, Inc.

3.    Enter judgment for all contribution shortages owed for Trinity d/b/a MacArthur in the total amount of $776.95.

4.    Enter judgment for all interest owed in the total amount of $1,249.86 for both locations of Trinity Oakland, Inc.

5.    Enter judgment for all liquidated damages owed in the total amount of $2,778.08

8

for both locations of Trinity Oakland, Inc.

6.    Enter judgment for all interest and liquidated damages since the time of this complaint on all previously and subsequently submitted reports and contributions for both locations of Trinity Oakland, Inc.

7.    Require Defendant to reimburse Plaintiffs for all costs incurred in bringing this action, including reasonable attorney fees and court costs, pursuant to Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D);

8.    Enter a permanent injunction requiring Defendant to timely pay all contributions and submit its required reports to the Pension Fund as they become due and owing;

9.    Award such other relief as the Court deems just and proper.

Respectfully submitted,

_____/s/_____
Richard C. Welch (Bar# 485756)
Eugene K. Ahn
Mooney, Green, Baker & Saindon, P.C.
1920 L Street, N.W., Suite 400
Washington, D.C. 20036
(202) 783-0010
(202) 783-6088 facsimile
Counsel for Plaintiffs

April 24, 2008

# EXHIBIT A



# Health Care Workers Union
# SEIU 250
### AFL-CIO

560 20th Street
Oakland, CA 94612-1602

510-251-1250 • 800-585-4250
www.SEIU250.org
*"Quality Health Care for All"*

# COLLECTIVE BARGAINING AGREEMENT
## with
# TRINITY OAKLAND, INC.
## d/b/a
## MacArthur ✦ High Street

*Effective April 1, 2004 Through June 15, 2005*

# FOREWORD

Dear SEIU-United Healthcare Workers, West Member,

Working in long term care is hard work – physically and emotionally.

Unfortunately, the work we do is not appreciated by the public at large, by most politicians, and even some of our employers.

Consequently, long-term care has become the sweatshop of the health care industry as nursing home workers must work harder and receive lower wages and benefits than our counterparts in acute care.

Over two-thirds of the care we provide is funded by the State of California through the Medi-Cal program, and our employers are basically government contractors. This means the big, important decisions about nursing home funding, staffing levels and other important matters are made by legislators and/or DHS bureaucrats.

Therefore, the solution to almost all of our problems – low wages, understaffing, poorly maintained buildings – depends on our ability to convince the State to make the right decisions, changes, and reforms.

In December of 2000, our Nursing Home Division Stewards Council adopted the goal of getting nursing home workers the same wages and benefits as acute care workers.

This is the right goal for ourselves, our residents, and our employers. But nobody in State government is just going to give us what we deserve without a struggle just because it's the right thing to do.

To achieve our goal will take hard work. We know we can achieve results because of the successes we have had in the past two years:

♦ Two Medi-Cal wage pass-throughs in 1999 and 2000

♦ Staffing ratio legislation in 2001

♦ Specific budget allocation in 2001-2002 fiscal year for facilities with a binding, written, enforceable agreement to increase worker wages and benefits

But we have a long way to go.

This in turn means we have to be politically active and involved:

Politicians respond to political power.

♦ We must make sure candidates for State office understand our issues and agree to support our cause as a condition of receiving our SEIU endorsement.

♦ We must be prepared to support our endorsed candidates through voluntary contributions to COPE, the Union's political action fund, and by talking to our co-workers, friends and neighbors by telephoning them or going door-to-door at election time.

♦ We must be prepared to hold elected officials accountable and to make our voices heard by going to Sacramento with our co-workers whenever it is necessary to make sure the State does the right thing.

Get involved in the Union to add your voice to the cause. The more members that actively participate in the struggle, the sooner we will accomplish our just goals.

Our fate is in our hands. We urge you to get involved today.

In Solidarity,

Sal Rosselli

Joan Emslie

# *NOTES*

# Table of Contents

AGREEMENT ...................................................................1

PREAMBLE ...................................................................1

SECTION 1    RECOGNITION.......................................1
SECTION 2    MANAGEMENT RIGHTS...............................2
SECTION 3    HIRING ............................................2
SECTION 4    UNION MEMBERSHIP ................................2
SECTION 5    COPE CHECK OFF ..................................4
SECTION 6    UNION REPRESENTATIVES ..........................5
SECTION 7    DISCHARGES AND DISCIPLINE ......................5
SECTION 8    HOURS OF WORK ...................................7
SECTION 9    DAYS OFF .........................................9
SECTION 10   NIGHT DIFFERENTIAL ..............................10
SECTION 11   WAGES ............................................10
SECTION 12   PAID VACATION ...................................11
SECTION 13   HOLIDAYS .........................................12
SECTION 14   HEALTH INSURANCE ................................13
SECTION 15   DENTAL INSURANCE ................................15
SECTION 16   PENSION PLAN ....................................16
SECTION 17   SICK LEAVE .......................................16
SECTION 18   MEAL AND REST PERIODS ...........................17
SECTION 19   NO DISCRIMINATION ...............................19
SECTION 20   PAYDAYS ..........................................19
SECTION 21   CATEGORIES OF EMPLOYEES .........................20
SECTION 22   SENIORITY ........................................21

SECTION 23   LEAVES OF ABSENCE ......................................22

SECTION 24   BEREAVEMENT LEAVE ....................................24

SECTION 25   NO STRIKE OR LOCKOUT ...............................24

SECTION 26   JOB DESCRIPTIONS............................................24

SECTION 27   LIMITED/LIGHT DUTY .....................................25

SECTION 28   GRIEVANCE PROCEDURE ...............................25

SECTION 29   NOTICE OF TRANSFER, ASSIGNMENT, OR
             SALE .............................................................................29

SECTION 30   SAVINGS CLAUSE .............................................29

SECTION 31   WORKLOAD DISTRIBUTION............................29

SECTION 32   EDUCATIONAL LEAVE/LVNs .........................30

SECTION 33   JURY DUTY .........................................................30

SECTION 34   EMPLOYEE RELOCATION ...............................31

SECTION 35   TRAINING AND IN-SERVICE............................32

SECTION 36   ORIENTATION DUTY PAY ...............................33

SECTION 37   SAFETY COMMITTEE ........................................33

SECTION 38   LABOR-MANAGEMENT COMMITTEE ..........33

SECTION 39   TERM OF AGREEMENT ....................................35

APPENDIX A      WAGES ...........................................................37

APPENDIX B      PENSION PLAN .............................................39

# *NOTES*

v

# AGREEMENT

This Agreement is entered into this 1st day of April 1, 2004, by and between Trinity Health Care, Inc. d.b.a. MacArthur Convalescent Hospital and High Street Convalescent Hospital, Oakland (hereinafter called "the Employer") and SEIU Health Care Workers Union, Local 250, AFL-CIO (hereinafter referred to as "the Union").

# PREAMBLE

Both parties recognize that it is to their mutual advantage and for the protection of the patients to have efficient and uninterrupted operation of the Hospital. This Agreement is for the purpose of establishing such harmonious and constructive relationships between the parties that such results will be possible.

The Union and the Employer agree to encourage all personnel to treat one another, regardless of position or profession, with dignity, respect and trust and recognize the individual contribution each of us makes in our daily work.

## SECTION 1        RECOGNITION

The Employer recognizes the Union as the exclusive bargaining agent for all employees whose classifications are listed in Appendix "A," below. Excluded from the bargaining unit are Registered Nurses, Office-Clerical Employees, Activity Workers, Social workers, Supervisors, and administrative personnel, as defined in the Labor-Management Relations Act of 1947, as amended.

## SECTION 2          MANAGEMENT RIGHTS

The Employer specifically reserves all rights, powers, an authority inherent in and/or customarily exercised by management, except as otherwise specifically designated or modified by this Agreement. The management of the facility and the direction of the work force is vested exclusively with the Employer. Said rights include the right to hire, promote, discipline, suspend, transfer within the facility, or discharge for cause; the right to lay off, temporary or permanently; the right to schedule hours; and the right to establish reasonable work rules. The Employer has the sole right to determine the services it will offer, the number of employees necessary to perform such services, the type of supplies and the equipment it will use, the quality of services necessary, and the location and continuity of its business. The above rights do not exclude the exercise of management prerogatives reasonably necessary to the safe and efficient operation of the facility, which have not been specifically enumerated.

## SECTION 3          HIRING

A probationary period of ninety (90) days from the date of first hiring shall be established for new employees. During such probationary period, the employee may be discharged for any reason and without recourse to the Grievance Procedure.

## SECTION 4          UNION MEMBERSHIP

A. Not later than 30 days following the first pay period of employment, or the effective date of this agreement, whichever is later, every employee subject to the terms of this Agreement shall, as a condition of employment, become and remain a member of the Union paying the periodic dues and initiation

2

fees uniformly required, or, in the alternative, shall, as a condition of employment, pay a fee in the amount equal to the periodic dues and initiation fees uniformly required as a condition of acquiring and retaining membership, or, if the employee objects to the payment of that agency fee, such employee shall, as a condition of employment, pay that portion of the agency fee that is related to the Union's representation costs.

B. At the time a new employee is hired who will be subject to this Agreement, the Employer shall deliver to the employee a written notice stating that the Employer recognizes the Union as the collective bargaining agent for the employees covered by this Agreement and quoting or paraphrasing the provision of this Section of the Agreement, form to be furnished by the Union. Not later than the tenth (10th) of each month, the Employer shall supply the Union with the names, addresses and classification of new employees and the names of employees terminated.

Once a year, the Employer will provide the Union with the names, addressees, classifications, Social Security numbers and wage rates of employees.

C. Upon written notice to the Employer and upon examination of the documentary proof that an employee is not a member of the union within the meaning of this Section and that such employee has failed to maintain membership as above described, the Employer shall terminate the employment of such employee.

D. Upon voluntary signed authorization by an employee, the Employer agrees to deduct the union fees and remit same to the office of the Union. The initiation fee will be withheld in eight (8) equal amounts over successive payroll periods. Monthly

3

dues will be withheld on a monthly basis. The Employer and the Union shall maintain standard forms and routines for the handling and processing of such notices to employees and to the Union.

E. The Employer may hire employees from any source, but the Union shall be notified of vacancies in departments under its jurisdiction for the purpose of referring union applicants to the Employer. Any person may be employed who, in the judgment of the Employer, will make the best employee and the Employer shall be the sole judge of the fitness of any applicant for the job.

F. Employees will be allowed to enroll in the Credit Union offered by the Company. If the Employer fails to remit credit union deposits withheld from employees' wages to the credit union within seven working days after payday, the Employer shall pay affected employees a penalty of 25% of the deposit for every day the money is not remitted to the credit union. Additionally, the Employer shall be liable for all late fees and penalties, and bounced check fees incurred by the employees as a result of the Employer's failure to promptly remit the deducted funds to the credit union.

## SECTION 5        COPE CHECK OFF

The Employer will also honor written assignment of wages to the Union for the payment of voluntary contributions to the Union's Committee on Political Education (COPE) fund, when such assignments are submitted in a form agreed to by the Employer and the Union, and will remit such contributions to the Union in accordance with the procedures set forth in Section 4 Union Membership of this Agreement dealing with the deduction and remittance of Union dues above.

4

## SECTION 6          UNION REPRESENTATIVES

A. A duly authorized Union Field Representative shall be allowed to visit the premises of the Employer for the purpose of ascertaining whether this Agreement is being observed. This privilege shall be exercised reasonably. The Field Representative shall report to the Administrator at the time of any visit and shall not interfere with the normal conduct of work. He/she will be allowed to meet with an employee in a designated area at the time of the employee's normal break periods.

B. The Union shall be permitted to maintain shop stewards on the job to receive and process complaints and grievances. The receipt and processing of complaints and grievances shall not be handled during the working time of the shop steward or employee involved without the permission of the supervisor and shall not interfere with the normal conduct of work. The Union shall notify the Employer of the names of employees appointed as shop stewards.

C. The Employer will make a bulletin board available in each employee break room for use by the Union. The bulletin board shall be no smaller than ten square feet.

## SECTION 7          DISCHARGES AND DISCIPLINE

A. The Employer shall have the right to discipline suspend or discharge any employee for proper cause in accordance with the facility's reasonable house rules and employee handbook. No counseling session shall be deemed to constitute discipline under this Article and no such counseling shall be a grievance matter.

5

B. Warning notices shall remain in an employee's record (file) for twelve (12) months from the date of issuance; however, all warning notices will be removed after twelve (12) months from date of issuance.

C. The Employer recognizes the concept of progressive discipline and will endeavor to utilize a progressive discipline response in cases of poor work performance, and violation of house rules. However the nature and severity of an offense will permit imposition of disciplinary action at any level of discipline. In the event of a conflict, this Agreement will take precedence over house rules.

D. The Employer shall furnish a copy of each warning notice to the employee and shop steward. The employee shall indicate on the face of any warning notice received an acknowledgment by their signature that they have received such copy; however, in so signing, no implication of admission to facts of the offense or guilt may be drawn. The Employer will furnish copies of notices regarding suspensions or terminations to the Union.

E. The Employer shall provide employee warning notices either in private or to the employee in a sealed envelope. Should an employee specifically so request, that employee may have a shop steward or another employee witness present during any disciplinary action.

F. The Employer shall effect disciplinary action no later than five (5) workdays from the date of discovery of an offense and investigation of such an offense.

6

# SECTION 8        HOURS OF WORK

A. A straight-time day's work shall consist of not more than eight (8) hours and the straight-time workweek shall be not more than forty (40) hours, five (5) days per week.

If an employee is required to work in excess of the straight-time workday or workweek, he/she shall be paid overtime at the rate of time and one-half (1-1/2).  An employee who works in excess of twelve (12) consecutive hours shall be paid at two (2) times his/her straight-time hourly wage for all hours worked in excess of twelve (12) hours.

Each employee shall receive two (2) consecutive days off each week, provided that the days off may be split or rotated by mutual agreement without penalty. Any full-time employee who works on a sixth (6th) consecutive day in a workweek will be paid at the rate of time and one-half (1-1/2).  In no event will an employee be scheduled to work more than six (6) consecutive days in a workweek.

If an employee is required to work for seven (7) consecutive days, he/she shall be paid at the rate of double (2x) time for such seventh (7th) day.

Notification to the Union shall be given prior to any drastic reduction of employees due to a lowered operating census. Where three (3) or more employees would be affected by either a cutback in employees or a cut in hours, the Employer will notify the Union in advance.

Part-time employees shall be eligible for the overtime rate of time and one half (1-1/2) if they have worked more than thirty (30) hours in the same workweek as the seventh (7th) consecutive day occurs.

7

B. Eight (8) hours of work performed within a spread of more than nine (9) hours shall constitute a split shift and shall be compensated by the payment of one additional hour of pay at the employee's straight-time hourly wage rate.

C. No employee shall be required to work more than eight hours in a day, or on his/her day off, or in excess of their regularly scheduled hours.

D. A schedule of starting and quitting times and days off shall be posted on the bulletin board available to all employees at least two weeks in advance of the first day on the schedule. Once posted, the schedule may not be changed without the consent of the affected employee(s).

E. Overtime and additional hours shall be distributed by seniority to employees who have volunteered to work overtime and additional hours. The overtime and additional hours sign-up list will be posted for employees to sign up at the same time as the schedule is posted. The Employer shall assign available hours first to employees for whom the additional hours would be paid at straight-time; then to employees for whom the additional hours would be paid at time and a half; and then to employees for whom the additional hours would be paid at double time.

F. An employee who reports to work as scheduled will be guaranteed four (4) hours pay at straight-time for reporting as scheduled if work is not provided by the Employer, unless the employee's schedule is understood to call for a shift of less than four (4) hours, in which case the employee will be paid for scheduled hours only. If such employee reports to work as scheduled and works in excess of four (4) hours, the employee will be guaranteed eight (8) hours pay at straight-time if work is not provided by the Employer, unless the employee's schedule is understood to call for a shift of less than eight (8) hours, in

8

which case the employee will be paid for scheduled hours only. In cases where the employee is entitled to overtime the employee will receive overtime at the rate of time one and one-half (1 ½) for actual hours worked or the appropriate guarantee, whichever is higher.

G. The Employer shall retain the right to determine work schedules. If the Employer intends to change the work scheduling method, the Employer shall give at least thirty (30) days notice to the Union and meet with the Union upon request to discuss such change. The Employer will consider a request from a majority of the employees in a department or shift to change the method of scheduling. A scheduling change under this paragraph shall not be subject to the grievance procedure set forth in Section 28.

H. If an employee is called to work and the Employer fails to give at least one (1) hour's notice before the start of the shift, and the employee reports to work within sixty (60) minutes, the employee will be paid for the full shift.

## SECTION 9       DAYS OFF

Notwithstanding any other provision of the Agreement, any regular employee who works on his/her regularly scheduled day off will be paid at the overtime rate of one and a half times their straight-time hourly wage rate provided s/he has worked all his/her scheduled workdays in the workweek. Any regular employee who works on his/her second consecutive regularly scheduled day off will be paid at the overtime rate of two times their straight-time hourly wage rate provided s/he has worked all his/her scheduled workdays in the workweek.

9

An employee may be permitted to switch days off with another employee provided the Employer's permission is granted and no penalty to the Employer is involved. The Employer will exercise its best efforts in the administration of this clause to accommodate the employee's request.

## SECTION 10    NIGHT DIFFERENTIAL

A shift differential of twenty-five cents ($0.25) per hour shall be granted to all employees regularly working a night or evening shift commencing at or after 2:00 p.m. and prior to 6:00 a.m. Effective August 1, 2000, the shift differential will increase to thirty-five cents ($0.35) per hour.

## SECTION 11    WAGES

A. Wage rates and classifications are attached as Appendix "A." The parties agree that the rates shown in Appendix "A" of this Agreement are minimum rates and nothing in this Agreement shall prohibit the Employer from paying higher than the rates shown.

B. Culinary employees shall be entitled to meals, in addition to their regular wages, provided that there shall be no interruption of work schedules.

C. Employees relieving an employee in a higher classification will be paid at the rate for the higher classification, for all hours worked in the higher classification.

D. All employees who in the past have enjoyed rates above the minimum for the classifications listed in Appendix "A" shall have such differential maintained above all present and future wage increases and existing benefits shall also be maintained for the duration of this Agreement.

10

E. All eligible employees shall receive their tenure increases on their anniversary date.

F. Employees' paycheck stubs shall include their current accrued vacation and accrued sick leave.

## SECTION 12        PAID VACATION

A. Regular Full-time employees shall be granted annual paid vacation as follows:

- After the first (1st) year of continuous employment, one (1) week (five [5] working days) of vacation with pay;
- After the second (2nd) year of continuous employment, two (2) weeks (ten [10] working days) of vacation with pay;
- After the fifth (5th) year of continuous employment, three (3) weeks (fifteen [15] working days) of vacation with pay;
- After the eighth (8th) year of continuous employment, four (4) weeks (twenty [20] working days) of vacation with pay;
- Employees with fifteen (15) years of service shall be entitled to five (5) weeks (twenty-five [25] working days) of vacation with pay.

B. Regular Part-time employees are entitled to pro-rated vacation.
- Employees shall be entitled to pro-rated vacation pay upon termination for any reason.

C. The Employer will make every effort to schedule vacations throughout the calendar year.

D. Upon written request, at least one (1) month in advance, and upon mutual agreement between employee and Employer, an employee shall receive up to fifteen (15) working days leave of absence.

11

## SECTION 13     HOLIDAYS

A. The following days shall be recognized as paid holidays for Regular employees, provided that the employee has been on the payroll ninety (90) days prior to the holiday:

| | |
|---|---|
| New Year's Day | Labor Day |
| Martin Luther King, Jr. Day | Thanksgiving Day |
| Presidents' Day | Christmas Day |
| Memorial Day | Floating Holiday* |
| Independence Day | Employee's Birthday* |

*An employee's birthday and floating holiday shall be paid holidays for all employees with at least one (1) year of service with the Employer.

B. If an employee is required to work any of the aforementioned holidays, he/she will be paid at the rate of straight-time for all hours worked in addition to another day off, with pay, within sixty (60) days after the holiday or, at the employee's option, another day's pay in lieu thereof. Employees who work on New Year's Day, Thanksgiving Day, or Christmas Day will be paid at the overtime rate of one and a half times their straight-time hourly wage rate, and will have the option of taking another day off with pay or receiving a day's pay within sixty days following the holiday worked.

C. If a holiday falls on the employee's regular day off, he/she shall be granted another day off, with pay, within sixty (60) days after the holiday or, at the employee's option, another day's pay in lieu thereof.

12

D. If a holiday falls within an employee's vacation time, one (1) day, with pay, shall be added to his/her vacation time.

E. Any accrued holiday time with pay, to be added to his/her vacation time, shall be paid to the employee in the event of resignation, termination or layoff prior to vacation.

F. In order for an employee scheduled off on a holiday (other than Thanksgiving, Christmas or New Year's Day) to be eligible for holiday pay, the employee must work his/her last scheduled day before and first scheduled day following the holiday, unless excused by the Administrator.

G. In order for any employee to be entitled to the holiday benefit for Thanksgiving, Christmas and New Year's Day, he/she must work the holiday, if scheduled, and must work all regularly scheduled shifts during the workweek in which Thanksgiving, Christmas or New Year's Day fall.  It is not the intention of the Employer to deprive any employee of holiday pay for failure to work all scheduled shifts in the workweek in which the holiday falls, under circumstances where said employee's failure to work is the result of either illness proven by a doctor's certificate or the employee being sent home by the Employer on account of illness.

## SECTION 14        HEALTH INSURANCE

A. Effective on the first day of the month following completion of sixty (60) days of employment, all regular full-time and regular part-time employees shall be eligible to enroll in the health plan.  The coverage shall be provided through the Health Care Employees/Employers Health and Welfare Trust, and shall consist of Kaiser Permanente Plan (Group Number 36301-0003 ($10.00 [ten dollar] office co-pay, [$0.00] hospital co-pay, $5.00 [five dollar] prescription co-pay, 20% DME, $50.00 [fifty dollar]

Emergency Room, $50.00 [fifty dollar] Ambulance, $175.00 [one hundred seventy five] Optical Allowance).

B. The Employer will pay a percentage of the required monthly premium for employee-only coverage as follows:

| High Street and Mac Arthur | Percentage |
|---|---|
| Less than 2 years of service - | 65% |
| 2 or more, but less than 10 years of service | 90% |
| 10 or more years of service | 100% |

C. Eligible employees may enroll their spouse, dependents or domestic partners at their own expense. Employees paying a portion of the required monthly premium shall do so through payroll deduction.

D. The Employer shall remit the required monthly premiums to the Trust in a timely fashion so as to ensure continued coverage for eligible employees.

E. The Employer will inform new employees of the availability of health insurance at the time of hire and at the time of initial eligibility. Those employees electing coverage will be covered as provided in subsection A above. Those employees declining coverage will be required to sign a waiver indicating that health insurance was offered by the Employer and declined by the employee.

F. The Employer agrees to assume all costs in regard to annual physicals, tests, and x-rays, as long as the employee utilizes the Employer's contracted physician. If the employee chooses to

14

use his/her personal physician, the Employer will only reimburse the employee for the amount the Employer would have incurred through the Employer's contracted physician. However, if reasonable notice is given to the employee of the time and place for a physical examination and x-ray, an employee's failure to attend, without an acceptable reason deemed by the Employer, shall be grounds for dismissal.

## SECTION 15        DENTAL INSURANCE

A. Effective on the first day of the month following completion of one hundred and eighty (180) days of employment, all regular full-time and regular part-time employees shall be eligible to enroll in the dental plan. The coverage shall be provided through the Health Care Employees/Employers Dental Trust, and shall consist of Delta Dental Plan VI (Diagnostic and Preventive 80%; Other Basic 80%; Crowns and Casts 80%; Prosthodontics 50% - 12 month wait; $50 initial deductible; maximum yearly benefit $1000).

B. The Employer will pay a percentage of the required monthly premium for employee-only coverage as follows:

### High Street and Mac Arthur

### All Employees – 65%

C. The Employer shall remit the required monthly premiums to the Trust in a timely fashion so as to ensure continued coverage for eligible employees.

15

D.  The Employer shall inform new employees of the availability of dental insurance at the time of hire and at the time of initial eligibility.  Those employees electing coverage will be covered as provided in subsection A above.  Those employees declining coverage shall be required to sign a waiver indicating that dental insurance was offered by the Employer and declined by the employee.

## SECTION 16          PENSION PLAN

Effective June 1, 1999, the Employer agrees to become and remain a participating Employer in the Service Employees International Union National Industry Pension Fund as outlined in Appendix B of this Agreement, hereby incorporated as if set forth in full.

## SECTION 17          SICK LEAVE

A. Each regular full-time employee shall accrue one (1) day of paid sick leave for each calendar month of employment, commencing with the first month of employment.  Regular part-time employees shall accrue paid sick leave on a pro-rated basis. Sick leave shall accrue to a maximum of thirty-five (35) paid workdays.

B. An employee shall not be entitled to use paid sick leave until he/she has been continuously employed for six (6) calendar months.

C. The payment of sick leave shall commence with the first (1st) day of each illness for employees with one (1) or more years of credited service.  The payment of sick leave shall commence with the second (2nd) day of each illness for employees who have less than one (1) year of service.

16

D. The Employer may only request a doctor's certificate as a condition of paying sick leave when there has been a clear pattern of excessive sick leave use (more than one day per month for three consecutive months, or more than three days in any one month).  Employees may not be disciplined for any absence due to illness.

E. Employees who inquire shall be told, within forty-eight (48) hours, the amount of sick leave and/or vacation to which they are entitled.  It is understood that this privilege shall not be abused and that the answer given shall not be controlling over a different calculation arrived at by the Employer's corporate payroll department.

F. Unused sick leave is not convertible to cash.

G. Sick leave shall be integrated with State Disability Insurance benefits or Workers' Compensation benefits so that the total of daily benefits shall not exceed a straight-time day's pay.

H. Any employee who works all his/her scheduled shifts in a calendar month shall receive a bonus of $20 (twenty dollars) to be paid on the second payday of the following month.

## SECTION 18      MEAL AND REST PERIODS

A. All employees who work a shift of five or more hours shall be entitled to an unpaid meal period of at least 30 minutes as close to the middle of their shift as possible.  Employees on their unpaid meal period are considered 'off-duty', and the Employer may not require such employees to remain on the premises.  Licensed personnel on the P.M. and Nightshifts who are required by the Employer to remain on the premises during their 30 minute meal period shall be paid for the meal period.

17

B. All employees shall be granted a rest period of 15 minutes during each half shift without deduction in pay. In addition to the rest period, each employee will be granted five minutes of 'travel time' at each rest period. The rest period shall occur as near the middle of each half-shift as possible.

C. All employees scheduled to work four or more hours of overtime in one day shall, in addition to the rest periods in A and B above, be granted a paid rest period of at least 15 minutes at the conclusion of eight hours of work, and a paid rest period of at least 15 minutes at the conclusion of ten hours of work. If the overtime will exceed six hours, the employee shall be entitled to 30 minute paid meal period at the conclusion of twelve hours of work; and when an employee works a double shift, the employee will be granted a final paid rest period of 15 minutes at the conclusion of 14 hours if work. There will be flexibility in the scheduling of all break periods herein outlined so that not all employees are on break at the same time, and there are sufficient staff on the floor.

D. Managers and supervisors may not interrupt employees' meal and rest periods except in the case of emergency, which shall be defined as an event or condition requiring the presence of the police, fire department, or EMS personnel, or other dire (stat) patient emergency. Any employee required to work during the meal and rest period due to an emergency will be allowed to make up the missed meal period or rest period time by the end of the shift.

## SECTION 19          NO DISCRIMINATION

The Employer and the Union agree that neither the Union nor the Employer shall discriminate with respect to employment or conditions of employment by reason of Union activity, race, creed, color, national origin, age, sex, sexual orientation, marital status, physical disability (including pregnancy), or medical condition.

## SECTION 20          PAYDAYS

A. Paydays shall be on the 10th and 25th of each month. Any errors of $50.00 (fifty dollars) or more in employees' paychecks will be corrected within four working days. Errors of less than $50.00 will be corrected on the next paycheck.

B. The Employer shall exert its best efforts to have paychecks for night shift employees available at the end of their shift on payday and paychecks for the balance of employees by 9:30 a.m. or the first coffee break on payday. Day shift and P.M. shift employees who are scheduled for a day off on a regular payday (every other week) will have paychecks made available before the end of shift on the day before each payday.

C. When payday falls on Saturday or Sunday, the Employer will exert its best efforts to provide paychecks on the proceeding Friday by 11:00 a.m. The workweek for pay purposes shall extend from Sunday 12:01 a.m. to Saturday 12:00 midnight.

D. If the Employers' paychecks are not honored by the bank due to insufficient funds, the Employer will reimburse affected employees for any bounced check fees and for any late charges incurred by the employees as a result.

## SECTION 21     CATEGORIES OF EMPLOYEES

A. Regular full-time

Regular full-time employees are those who work an average of 35 or more hours per week.  Regular full-time employees shall be entitled to all fringe benefits as provided for in this Agreement.

B. Regular part-time

Regular part-time employees are those who work an average of 22 or more, but less than 35 hours per week.  Regular part-time employees shall be entitled to participate in the health and dental insurance on the same basis as full-time employees; pension plan participation as provided for in Section 16. - Pension Plan and Appendix B; and to pro-rated paid vacation, paid holidays, and paid sick leave.

C. Short Hour

Short hour employees are those with regular schedules of fewer than 22 hours per week.

D. Casual/On-call

Casual or On-call employees are those without regular schedules who work on an intermittent basis.

E. Temporary

Temporary employees are those who are employed for a regular schedule or for a specific assignment not to exceed 60 calendar days.

F. Short hour, Casual/On-Call, and Temporary

Employees are not entitled to any contractual fringe benefits, but shall be entitled to shift differentials when applicable, and shall receive a differential in-lieu-of benefits of $1.00 per hour in addition to their straight-time hourly wage rate.

G. The Employer shall hire employees on the basis of full-time employment in light of the available work, and will limit the use of short hour, casual/on-call, and temporary employees to a minimum, and upon the specific written request of employees and subject to approval by the Union.

## SECTION 22        SENIORITY

A. In matters of lay offs and recalls, the principle of seniority within classification shall prevail, provided, however, that more senior employees may be considered for positions held by less senior employees in other classifications, if they can perform the job without training or education. In the event of reductions of hours, such reduction will be by seniority.

New or Open Positions

All new or open positions covered by this Collective Bargaining Agreement shall be posted and awarded by seniority and posted for five days on the facility bulletin boards.

B. In matters of promotions, the principle of seniority shall prevail, provided merit and ability are equal, as judged by the Employer. The Employer shall not be arbitrary or capricious in its judgment of merit and ability.

C. It is understood that none of the provisions of this Section or its application shall entail a "bumping" procedure. (Lay offs shall be evaluated on a departmental basis, and not by shift. The

21

least senior employees in a department are laid off first and replaced with the remaining more senior employees.)

D. A regular employee' s seniority is defined as his/her most recent period of continuous service with the Employer.

E. An employee's seniority shall be lost in the following instances:

   1. When an employee quits voluntarily.

   2. When an employee is discharged for cause.

   3. When an employee fails to return to work or notify the Employer of his/her intention to return to work within a reasonable period of time not to exceed seven (7) calendar days from receipt of notice of recall from lay off sent to the employee at the address on file with the Employer.

   4. When an employee does not perform any work for the Employer for a period of one year.

## SECTION 23      LEAVES OF ABSENCE

A. Application for a leave of absence shall be made in writing by an employee requesting leave and, if approved, will be approved in writing.   Any denials will also be in writing. Authorized leaves of absence for any purpose shall not affect previously accumulated sick leave, vacations, seniority or tenure, except as provided for in Paragraph (E) of this Section; but no benefits will accrue, except as otherwise provided herein, during such leave of absence period.

B. Regular employees with six (6) months or more of continuous employment shall be granted a leave of absence, without pay, of up to six (6) months in cases of physical disability occurring on the job, upon presentation of medical certification. Regular employees with less than six (6) months of service shall be

22

granted a leave of absence without pay, for up to four (4) months in cases of physical disability due to pregnancy, upon presentation of medical certification. Regular employees with six (6) months or more of continuous service shall be eligible for up to twelve (12) months' leave of absence, without pay, for disabilities occurring on the job. Upon medical certification, such leaves may, upon request by the employee and solely at the Employer's option, be extended up to an additional six (6) months. It is understood that this Section shall not be interpreted as a limitation on the Employer's right to discipline employees for excessive absenteeism.

C. The Employer shall comply with all applicable State and Federal Laws regarding the Family Medical Leave Act (FMLA).

D. Emergency leave of absence of up to thirty (30) days may be granted to employees with one (1) year or more of employment. The Employer shall consider the situation of the employee and shall not unreasonably deny such a leave.

E. No leave of absence shall result in any adjustment of an employee's original date of hire (i.e., anniversary date).

F. Leaves of absence may be extended beyond the above-specified limits for just cause, upon mutual agreement between the Employer and the employee.

G. Any employee who returns from an authorized leave of absence shall be placed in his/her same classification. Any employee who returns from an authorized medical leave of absence shall be placed in his/her same classification and shift. However, it is understood that the Employer shall be under no obligation to place said employee in his/her same classification and shift or otherwise retrain an employee to work prior to the expiration date of the original leave of absence.

H. A shop steward with more than one (1) year of service may request a leave of absence for up to two (2) weeks to work on Union-related activities. Requests must be submitted not less than thirty (30) days prior to the beginning of the leave. The granting of the leave is at the discretion of the Employer, based on the needs of the facility. No request will be unreasonably denied.

## SECTION 24    BEREAVEMENT LEAVE

When a death occurs in the immediate family of a regular employee, he/she shall be entitled to a leave of absence, with pay, of three (3) days, if the funeral occurs within 300 miles of the facility, and an additional two (2) days, which shall be deducted from accrued sick leave, if the funeral occurs more than 300 miles from the facility.

The Employer may require proof of attendance and relationship, if a reasonable doubt exists, before granting paid leave in accordance with this Section. Immediate family is defined as spouse, sister, brother, son, daughter, parent, grandparent, mother-in-law, father-in-law, grandchild.

## SECTION 25    NO STRIKE OR LOCKOUT

There shall be no strike by the Union and no lockout by the Employer during the term of this Agreement, or any extension thereof.

## SECTION 26    JOB DESCRIPTIONS

The Employer shall maintain job descriptions for those employees covered by this Agreement. Copies shall be made available to the Union.

24

## SECTION 27     LIMITED/LIGHT DUTY

An employee who has suffered a temporary disability or on-the-job injury may be placed on modified/light duty, if a physical indicates that the employee can handle and will benefit from modified work and the physician indicates that the employee will be released to resume full duties within ninety (90) days.

Temporarily disabled employees working under limited/light duty restriction will be paid at the rate of one hundred percent (100%) of the employee's current straight-time rate of pay for such hours worked or the minimum required by the State, whichever is greater.

No employee shall be required to perform tasks which are contrary to his/her medical restrictions.

## SECTION 28     GRIEVANCE PROCEDURE

**Definition**

A grievance shall be defined as a claimed violation of specific provision or provisions of this Agreement and will be handled in the following manner; provided, however that any grievance arising out of the exercise of the rights set out in Section 2, Management Rights, shall not be the subject of a grievance or arbitration, except to the extent that these rights are otherwise limited by the terms of this Agreement.

Grievances arising as to the interpretation or application of this Agreement shall be handled in the following manner:

**Step I**

It is understood that an employee has no formal grievance until he/she or an authorized Shop Steward has discussed such complaint with his/her immediate supervisor with fifteen (15) working days from the date of the event giving rise to the concern, or the date the event became known.

The immediate supervisor will give the affected employee(s) or the Shop Steward his/her Step I response within three (3) working days of the Step I meeting. The Step I response will settle the matter, unless appealed to Step II.

**Step II**

If the matter is not resolved at Step I, it shall be reduced to writing and submitted to the facility Administrator with seven (7) working days of the Step I response or seven (7) working days from the time the immediate supervisor should have responded in Step I.

The written grievance shall contain all pertinent information including name of employee(s), the date of the incident, the Section of the Agreement alleged violated and the remedy sought.

The Union Field Representative or the Shop Steward and the facility Administrator shall arrange a mutually agreeable date to meet within ten (10) working days from the receipt off such grievance for the purpose of attempting to settle the matter.

The facility Administrator shall respond to the written grievance in writing within five (5) working days following the meeting. The Step II response will settle the matter, unless appealed to Step III.

**Step III**

If the parties are unable to resolve the dispute through the foregoing procedure, either party may request, in writing, within ten (10) working days of the Step II response or lack of response, that the matter be referred to the Director of Human Resources or designee.

Upon receipt of the written Step III grievance request, the Employer's Director of Human Resources and the Union Field Representative shall schedule a meeting at the earliest possible mutually agreeable date in an attempt to resolve the matter.

The decision of the Director of Human Resources or designee will be delivered, in writing, within ten (10) working days following the date of such meeting.

The Director of Human Resources' Step III response will resolve the matter, unless it is forwarded to arbitration, as identified herein.

## Step IV – Arbitration

Either the Union or the Employer may request arbitration of a grievance which remains unresolved by serving a written demand for arbitration upon the other within ten (10) working days from the date of the procedures described in Step III, above, and by requesting a panel from the Federal Mediation and Conciliation Service.

No alleged violation of the Agreement or claim for relief shall be submitted to arbitration unless it has been raised in a timely fashion, filed and submitted in accordance with the procedure identified in the preceding sections, unless the parties agree otherwise.

The arbitrator shall be selected by alternate striking from the list requested from and furnished by the Federal Mediation and Conciliation Service.

27

In rendering a decision, the arbitrator shall be governed and limited by the provisions of this Agreement and the expressed intent of the parties as set forth in this Agreement. The arbitrator shall have no power to add to, subtract from or modify any of the terms or provisions of this Agreement and shall consider and resolve only such issues as are raised by the written grievance.

The decision of the arbitrator shall be final and binding upon both parties hereto and upon the employee or employees covered; however, the arbitrator shall not make an award outside the scope of the authority outlined herein, a change, modification or addition to this Agreement, and shall confine judgments strictly to the facts submitted in the hearing, the evidence before him/her and the terms and provisions of this Agreement.

The expense of the arbitrator shall be borne equally by the parties. The total cost of any stenographic record which may be made or transcripts thereof shall be paid by the party ordering same, unless the parties jointly agree otherwise.

**Time Limits and Additional Administrative Provisions**

A. Grievance settlements reached in Step I or Step II shall not establish a precedent for either party, unless mutually agreed to in writing.

B. With the exception of discharge, which will be filed at Step II within ten (10) working days of the discharge, all grievances must be processed through the aforementioned procedure prior to a request for arbitration being made or honored.

C. The time limits as set forth in this Section may be extended by mutual agreement between the parties. If such extension is verbal, there shall be written confirmation of such extension by the party requesting the extension.

D. If either party does not respond within the specified time limits, the other party may proceed to the next step. Any matter not appealed within the specified or mutually extended time limits shall be considered untimely.

## SECTION 29  NOTICE OF TRANSFER, ASSIGNMENT, OR SALE

In the event of a sale, transfer or assignment or any other disposition of the Convalescent Hospital herein, the Union will be given sixty (60) days' written notice by the Employer.

## SECTION 30  SAVINGS CLAUSE

If any provision of this Agreement or the application of such provision to any person or circumstance is ruled contrary to law, by any Federal or State Court or duly authorized agency, the remainder of this Agreement or the application of such provision to other persons or circumstances shall not be affected thereby.

## SECTION 31  WORKLOAD DISTRIBUTION

A. The Employer shall distribute the workload equitably among employees.

B. The Employer's intention is that there shall always be sufficient staff at the facility so that employee workloads are reasonable, consistent with resident/patient needs and acuity and employee health and safety. Every effort will be made to replace all staff who are counted in meeting sufficient staffing levels to meet resident needs.

C. The Employer recognizes a division of labor between housekeeping, dietary, laundry, nursing and other departments.

D. Based on census and acuity, it is the intention of the Employer to replace a scheduled employee who is absent for any reason, by calling employees who have volunteered for additional work or overtime.

E. It is the Employer's intention to comply with Federal and State law at all times.

F. A worker shall have the right to refuse to perform work under conditions that pose an imminent danger to their health and safety or the health and safety of others. In the event of a dispute over what constitutes 'imminent danger,' the Union Shop Steward will immediately meet with the employee and the supervisor to resolve the situation in a constructive manner. Any further dispute shall be subject to the Grievance and Arbitration procedure set forth in this Agreement.

## SECTION 32    EDUCATIONAL LEAVE/LVNs

The Employer shall provide, according to State Law, any required in-service training at the facility for non-licensed personnel. A Licensed Vocational Nurse (LVN) with one (1) year or more of continuous service shall be entitled to sixteen (16) hours of paid education leave per year. Anyone requesting leave under this Section must show proof of attendance at a class or seminar.

## SECTION 33    JURY DUTY

A regular full-time or part-time employee called for jury duty will receive the difference between jury pay or witness fees and normal straight-time earnings, with a limit of ten (10) working days. An employee must provide a receipt from the Jury Commissioner that he/she has been called or served on jury duty.

30

Jury pay shall be granted, provided the employee notifies the Administrator immediately upon notification that he/she will be required to perform jury duty service, presents proof of service requiring the employee's attendance and deposits with the facility the jury duty fees, except mileage.

## SECTION 34        EMPLOYEE RELOCATION

A. In the event of a closure or sale of a facility covered by this Agreement, the employees displaced shall have the right over any and all outside applicants to transfer from the facility to the other Trinity facilities in Northern California which are under contract to Local 250 provided:

1. An opening for the position requested exists;

2. Subject to approval of the new Administrator;

3. Such approval shall be set forth in writing between the employee and the Employer.

B. When the conditions in paragraph A, 1, 2 and 3 have been met and upon the Administrator's approval of such a relocation request, the new facility shall waive the probationary period for said employee and grant full seniority and other contractual benefits earned and accumulated by such employee at this facility.

C. The employee must agree to employment at the pay and benefit rate prevailing at the new facility.

# SECTION 35    TRAINING AND IN-SERVICE

A. When in-service educational programs are provided for employees covered under this Agreement, the Employer will use its best efforts to ensure that the program sessions are available to all employees on all shifts at the facility. Such training sessions are to be scheduled during an employee's scheduled work time. No employee will be penalized for not attending any session during his/her regular time off, provided that it is made up at a future date. Off-duty employees will be paid at their regular rate of pay with overtime paid, if applicable, for time spent in attendance at such in-service sessions.

B. The Employer shall ensure that all employees are fully trained to perform the skills required for quality resident care and are trained and regularly kept current on resident rights, DHS regulations, safety and health matters, and other issues in the interest of nursing home residents.

C. The Employer recognizes that back injuries are a serious hazard in a long-term care facility. The Employer agrees to establish a strong ergonomics program to protect employees from stresses that cause back injuries. This program will include, but is not limited to, a written ergonomics program, work site analysis, properly maintained lifting equipment to prevent patient and employee injuries, hazard prevention and administration controls, a medical management program for worker injuries, and training and education.

D. The Employer shall maintain the strongest feasible program to protect workers and residents from infections and communicable diseases. The Employer further agrees to supply training, protective equipment and vaccines, including hepatitis

32

B vaccine, to workers who are at risk of exposure to infectious diseases. The Employer will comply with all OSHA regulations and Public Health Service recommendations concerning infections and blood-borne diseases.

## SECTION 36      ORIENTATION DUTY PAY

Employees assigned by the Employer to orient a new employee shall be paid an orientation differential of $0.20 (twenty cents) per hour for all hours spent orienting the new employee.

## SECTION 37      SAFETY COMMITTEE

The Employer shall establish a safety committee which is representative of all departments, including Certified Nurse Assistants to investigate any hazardous conditions which may exist and make recommendations to assure the safety and health of the employees, patients and visitors.

## SECTION 38   LABOR-MANAGEMENT COMMITTEE

A. Effective upon the signing of this Agreement, a Joint Labor-Management Committee, with an equal number of representatives from both sides, will be established. Appropriate matters for consideration by this Committee are the following:

1. Ways and means for providing better patient care;

2. Joint participation in recruiting competent personnel;

3. Improving labor-management relations in order to minimize the volume of unnecessary complaints or grievances; and

4. Any subject related to the foregoing.

33

B. Two- (2) weeks' notice of a meeting shall be given by the requesting party.

C. This Section is not subject to the grievance procedure.

\* \* \*

## SECTION 39    TERM OF AGREEMENT

This Agreement shall be effective April 1, 2004 and shall remain in full force and effect through June 15, 2005, and from year to year thereafter, provided however, that either party may serve written notice on the other at least ninety (90) days prior to June 15, 2005, or any June 15 anniversary date of its desire to cancel or amend any provisions hereof.

In witness whereof, the duly authorized undersigned parties have hereunto fixed their signatures:

**Trinity Health Care, Inc.**

**SEIU Local 250,**
**Health Care Workers' Union,**
**AFL-CIO**

_____
Randy Kelis, President

_____
Sal Rosselli, President

_____
Date

_____
Date

_____
Arnold Sails
Assistant Director,
Convalescent Division

_____
Mark McCrady
Shop Steward, High Street

35

# Term of Agreement Signature Page (continued)

**Trinity Health Care, Inc.**
**d.b.a. High Street and**
MacArthur Care Centers

**SEIU Local 250, AFL-CIO**
**Health Care Workers' Union**

*Barbara Stewart*

Barbara Stewart
Shop Steward, MacArthur


*Deann Malone*

Deann Malone
Show Steward, MacArthur

36

## APPENDIX A        WAGES

Effective October 1, 2004, all employees shall receive a forty five cent ($0.45) per hour wage increase across-the-board, retroactive to April 1, 2004.    The $0.45 shall also be added to the Tenure/Classification Steps.

The following shall be the minimum straight-time hourly wage rate:

| CLASSIFICATION | START | 6 MOS. | 1 YR. | 2 YRS. | 3 YRS. |
|---|---|---|---|---|---|
| Certified Nurse Assistant | $10.85 | $11.20 | $11.55 | $11.90 | $12.25 |
| Uncertified Nurse Assistant | 9.35 | - | - | - | - |
| Physical Therapy Assistant & Rehab. Nursing Assistant | 10.90 | 11.25 | 11.60 | 11.95 | 12.30 |
| Licensed Vocational Nurse | 18.65 | 19.15 | 19.65 | 20.15 | 20.65 |
| Ward Clerk | 10.65 | 11.00 | 11.35 | 11.70 | 12.05 |
| Staffing/Central Supply Coordinator | 13.65 | 14.15 | 14.65 | 15.15 | 15.65 |
| Cook | 10.15 | 10.50 | 10.85 | 11.15 | 11.40 |
| Relief Cook | 9.90 | 10.25 | 10.60 | 10.90 | 11.15 |
| Dietary Worker | 9.15 | 9.45 | 9.80 | 10.10 | 10.40 |
| Maintenance Worker | 9.15 | 9.45 | 9.80 | 10.10 | 10.40 |
| Housekeeper | 9.15 | 9.45 | 9.80 | 10.10 | 10.40 |
| Janitor | 9.15 | 9.45 | 9.80 | 10.10 | 10.40 |
| Laundry Worker | 9.15 | 9.45 | 9.80 | 10.10 | 10.40 |

If unexpected monies are given the Convalescent industry in California by new Federal funding or new California funding prior to June 2005, parties agree to return to the bargaining table to negotiate wages.

*    *    *

## APPENDIX B          PENSION PLAN

### Section 1                Coverage

The Employer agrees to make periodic contributions on behalf of eligible employees covered by this Collective Bargaining Agreement to the Service Employees International Union National Industry Pension Fund, hereinafter referred to as the "Fund", in the amounts specified in Section 3 below.

### Section 2                Term

The Employer agrees to become and remain a participating Employer in the Fund throughout the term of this Collective Bargaining Agreement, including any extension thereof.

### Section 3                Contributions

1. Commencing on June 1, 1999, the Employer shall contribute to the Fund in the amount of $0.15 (fifteen cents) per compensated hour to a maximum of 173 hours per month, for all eligible employees covered by this Collective Bargaining Agreement.

2. Commencing on August 1, 2000, the Employer shall contribute to the Fund in the amount of $0.35 (thirty-five cents) per compensated hour to a maximum of 173 hours per month, for all eligible employees covered by this Collective Bargaining Agreement.

3. Contributions required by this provision shall be paid to the Fund on or before the fifteenth (15th) day of the month following the period for which contributions are due, or on or before such other date as the Trustees may hereafter determine.

4. Contributions shall be transmitted together with a remittance report containing such information, in such manner, and on such form as may be required by the Trustees of the Fund or their designee.

5. Notwithstanding any other provision of the Agreement, contributions shall be made on behalf of employees who have worked, or been compensated for, one thousand (1,000) hours or more during a calendar year. Whenever an employee has worked or been compensated for one thousand (1,000) hours or more during such calendar year, the Employer shall, on the date on which its next monthly contributions are due, make contributions retroactively for all hours for which such employee was compensated during that calendar year (or portion thereof). Thereafter, contributions shall be made for such employee irrespective of the number of hours worked, or for which compensation was received, in subsequent years. Until contributions are required to be made on behalf of an employee pursuant to the terms of this provision, the employee shall not be deemed to be a covered employee working in covered employment within the meaning of the SEIU National Industry Pension Plan. All employees who previously were participants in the pension plan sponsored by the Employer or its predecessor by virtue of having one thousand (1,000) or more hours of service with the Employer or predecessor shall be deemed to be participants under the SEIU National Industry Pension Plan and have contributions made on their behalf to the Fund for all compensated hours without the necessity of meeting any additional eligibility requirement.

**Section 4          Trust Agreement**

The Employer hereby agrees to be bound by the provisions of the Agreement and Declaration of Trust establishing the Fund, as it may, from time to time, be amended, and by all resolutions and rules adopted by the Trustees pursuant to the powers delegated to them by that Agreement, including collection policies, receipt of which is hereby acknowledged.

The Employer hereby designates the Employer Members of the Fund's Board of Trustees, or their duly selected successor(s), as its representatives on the Board.

**Section 5          Cooperation**

The Employer and Union agree to cooperate with the Trustees of the Fund in distributing Plan booklets, literature and other documents supplied by the Fund Administrator and in obtaining and providing such census and other data as may be required by the Fund's Administrator or Trustees to enable them to comply with the applicable provisions of the Employee Retirement Income Security Act (ERISA).

**Section 6          Approval By Trustees**

The undersigned parties acknowledge that the provisions of this Article and the participation of the employees covered by it are subject to approval by the Trustees of the Fund and that the Trustees reserve the right to terminate, at their sole and unreviewable discretion, the participation of the employees covered by this Agreement and to establish the level(s) of benefits to be provided.

Termination may be directed by the Trustees for reasons including, but not limited to, failure of the Employer to timely pay contributions and expiration of the Collective Bargaining Agreement.

The parties further acknowledge that the Trustees' acceptance for participation in the Fund of the employees covered by the Collective Bargaining Agreement is limited only to the categories of employment covered by the Collective Bargaining Agreement at the time application for acceptance occurs and the admission of other categories of employment to participate in the Fund will require specific acceptance by the Trustees.

**Section 7          Miscellaneous**

In the event of any inconsistency between this Appendix and the Collective Bargaining Agreement, the terms of this Appendix shall prevail.

**Trinity Health Care, Inc.**
**d.b.a. High Street, MacArthur,**
**Centers**

**SEIU Local 250**
**Health Care Workers' Union,**
**AFL-CIO**

_____
Randy Kelis, President

_____
Sal Rosselli, President

_____
Date

_____3/14/05_____
Date

_____
Arnold Sails
Assistant Director,
Convalescent Division

_____
Mark McCrady
Shop Steward, High Street

_____
Barbara Stewart
Shop Steward, MacArthur

_____
Deann Malone
Show Steward, MacArthur

AS: cc
OPEIU 29 AFL-CIO

43

# EXHIBIT B



# United Healthcare Workers – West

Service Employees International Union
CTW, CLC

560 Thomas L. Berkley Way
Oakland, CA 94612

510-251-1250 * 800-585-4250

www.seiu-uhw.org
*Quality Healthcare for All*

Collective Bargaining Agreement with

# Trinity Oakland, Inc.

### d/b/a

**High Street Convalescent Hospital, Oakland
MacArthur Convalescent Hospital**

March 11, 2006 Through August 15, 2008

## FOREWORD

Dear SEIU-United Healthcare Workers West Member,

Working in long term care is hard work – physically and emotionally. Unfortunately, the work we do is not appreciated by the public at large, by most politicians, and even some of our employers. Consequently, long-term care has become the sweatshop of the health care industry as nursing home workers must work harder and receive lower wages and benefits than our counterparts in acute care. Over two-thirds of the care we provide is funded by the State of California through the Medi-Cal program, and our employers are basically government contractors. This means the big, important decisions about nursing home funding, staffing levels and other important matters are made by legislators and/or DHS bureaucrats. Therefore, the solution to almost all of our problems -- low wages, understaffing, poorly maintained buildings -- depends on our ability to convince the State to make the right decisions, changes, and reforms. In December of 2000, our Nursing Home Division Stewards Council adopted the goal of getting nursing home workers the same wages and benefits as acute care workers. This is the right goal for ourselves, our residents, and our employers. But nobody in State government is just going to give us what we deserve without a struggle just because it's the right thing to do. To achieve our goal will take hard work. We know we can achieve results because of the successes we have had in the past two years:

♦ Two Medi-Cal wage pass-throughs in 1999 and 2000

♦ Staffing ratio legislation in 2001

♦ Specific budget allocation in 2001-2002 fiscal year for facilities with a binding, written, enforceable agreement to increase worker wages and benefits

But we have a long way to go. This in turn means we have to be politically active and involved: Politicians respond to political power.

♦ We must make sure candidates for State office understand our issues and agree to support our cause as a condition of receiving our SEIU endorsement.

♦ We must be prepared to support our endorsed candidates through voluntary contributions to COPE, the Union's political action fund, and by talking to our co-workers, friends and neighbors by telephoning them or going door-to-door at election time.

♦ We must be prepared to hold elected officials accountable and to make our voices heard by going to Sacramento with our co-workers whenever it is necessary to make sure the State does the right thing.

Get involved in the Union to add your voice to the cause. The more members that actively participate in the struggle, the sooner we will accomplish our just goals.

Our fate is in our hands. We urge you to get involved today.

In Solidarity,

| Sal Rosselli | Jorge Rodriguez | Joan Emslie |
|---|---|---|
| President | Executive-Vice President | Secretary-Treasurer |

i

# TABLE OF CONTENTS

PAGE

| | | |
|---|---|---|
| SECTION 1 | RECOGNITION | 1 |
| SECTION 2 | MANAGEMENT RIGHTS | 1 |
| SECTION 3 | HIRING | 1 |
| SECTION 4 | UNION MEMBERSHIP | 2 |
| SECTION 5 | COPE CHECK OFF | 2 |
| SECTION 6 | UNION REPRESENTATIVES | 3 |
| SECTION 7 | DISCHARGES AND DISCIPLINE | 3 |
| SECTION 8 | HOURS OF WORK | 4 |
| SECTION 9 | DAYS OFF | 5 |
| SECTION 10 | NIGHT DIFFERENTIAL | 5 |
| SECTION 11 | WAGES | 5 |
| SECTION 12 | PAID VACATION | 6 |
| SECTION 13 | HOLIDAYS | 6 |
| SECTION 14 | HEALTH INSURANCE | 7 |
| SECTION 15 | DENTAL INSURANCE | 8 |
| SECTION 16 | PENSION PLAN | 9 |
| SECTION 17 | SICK LEAVE | 10 |
| SECTION 18 | MEAL AND REST PERIODS | 11 |
| SECTION 19 | NO DISCRIMINATION | 12 |
| SECTION 20 | PAYDAYS | 12 |
| SECTION 21 | CATEGORIES OF EMPLOYEES | 12 |
| SECTION 22 | SENIORITY | 13 |
| SECTION 23 | LEAVES OF ABSENCE | 14 |
| SECTION 24 | BEREAVEMENT LEAVE | 14 |
| SECTION 25 | NO STRIKE OR LOCKOUT | 15 |
| SECTION 26 | JOB DESCRIPTIONS | 15 |
| SECTION 27 | LIMITED/LIGHT DUTY | 15 |
| SECTION 28 | GRIEVANCE PROCEDURE | 15 |
| SECTION 29 | NOTICE OF TRANSFER, ASSIGNMENT, OR SALE | 17 |
| SECTION 30 | SAVINGS CLAUSE | 17 |

ii

|  |  | PAGE |
|---|---|---|
| SECTION 31 | WORKLOAD DISTRIBUTION | 17 |
| SECTION 32 | EDUCATIONAL LEAVE/LVNs | 18 |
| SECTION 33 | JURY DUTY | 18 |
| SECTION 34 | EMPLOYEE RELOCATION | 18 |
| SECTION 35 | TRAINING AND IN-SERVICE | 19 |
| SECTION 36 | ORIENTATION DUTY PAY | 19 |
| SECTION 37 | SAFETY COMMITTEE | 19 |
| SECTION 38 | LABOR-MANAGEMENT COMMITTEE | 19 |
| SECTION 39 | IMMIGRATION AND PRIVACY RIGHTS | 19 |
| SECTION 41 | TERM OF AGREEMENT | 22 |
| APPENDIX A | WAGES | 23 |

## AGREEMENT

This Agreement is entered into this 1st day of April 1, 2004, by and between **Trinity Health Care, Inc. d.b.a. MacArthur Convalescent Hospital and High Street Convalescent Hospital, Oakland** (hereinafter called "the Employer") and SEIU United Healthcare Workers - West (hereinafter referred to as "the Union").

## PREAMBLE

Both parties recognize that it is to their mutual advantage and for the protection of the patients to have efficient and uninterrupted operation of the Hospital. This Agreement is for the purpose of establishing such harmonious and constructive relationships between the parties that such results will be possible.

The Union and the Employer agree to encourage all personnel to treat one another, regardless of position or profession, with dignity, respect and trust and recognize the individual contribution each of us makes in our daily work.

## SECTION 1          RECOGNITION

The Employer recognizes the Union as the exclusive bargaining agent for all employees whose classifications are listed in Appendix "A," below. Excluded from the bargaining unit are Registered Nurses, Office-Clerical Employees, Activity Workers, Social workers, Supervisors, and administrative personnel, as defined in the Labor-Management Relations Act of 1947, as amended.

## SECTION 2          MANAGEMENT RIGHTS

The Employer specifically reserves all rights, powers, an authority inherent in and/or customarily exercised by management, except as otherwise specifically designated or modified by this Agreement. The management of the facility and the direction of the work force is vested exclusively with the Employer. Said rights include the right to hire, promote, discipline, suspend, transfer within the facility, or discharge for cause; the right to lay off, temporary or permanently; the right to schedule hours; and the right to establish reasonable work rules. The Employer has the sole right to determine the services it will offer, the number of employees necessary to perform such services, the type of supplies and the equipment it will use, the quality of services necessary, and the location and continuity of its business. The above rights do not exclude the exercise of management prerogatives reasonably necessary to the safe and efficient operation of the facility, which have not been specifically enumerated.

## SECTION 3          HIRING

A probationary period of ninety (90) days from the date of first hiring shall be established for new employees. During such probationary period, the employee may be discharged for any reason and without recourse to the Grievance Procedure.

1

**SECTION 4**          **UNION MEMBERSHIP**

A. Not later than 30 days following the first pay period of employment, or the effective date of this agreement, whichever is later, every employee subject to the terms of this Agreement shall, as a condition of employment, become and remain a member of the Union paying the periodic dues and initiation fees uniformly required, or, in the alternative, shall, as a condition of employment, pay a fee in the amount equal to the periodic dues and initiation fees uniformly required as a condition of acquiring and retaining membership, or, if the employee objects to the payment of that agency fee, such employee shall, as a condition of employment, pay that portion of the agency fee that is related to the Union's representation costs.

B. At the time a new employee is hired who will be subject to this Agreement, the Employer shall deliver to the employee a written notice stating that the Employer recognizes the Union as the collective bargaining agent for the employees covered by this Agreement and quoting or paraphrasing the provision of this Section of the Agreement, form to be furnished by the Union. Not later than the tenth (10th) of each month, the Employer shall supply the Union with the names, addresses and classification of new employees and the names of employees terminated.

Once a year, the Employer will provide the Union with the names, addressees, classifications, Social Security numbers and wage rates of employees.

C. Upon written notice to the Employer and upon examination of the documentary proof that an employee is not a member of the union within the meaning of this Section and that such employee has failed to maintain membership as above described, the Employer shall terminate the employment of such employee.

D. Upon voluntary signed authorization by an employee, the Employer agrees to deduct the union fees and remit same to the office of the Union. The initiation fee will be withheld in eight (8) equal amounts over successive payroll periods. Monthly dues will be withheld on a monthly basis. The Employer and the Union shall maintain standard forms and routines for the handling and processing of such notices to employees and to the Union.

E. The Employer may hire employees from any source, but the Union shall be notified of vacancies in departments under its jurisdiction for the purpose of referring union applicants to the Employer. Any person may be employed who, in the judgment of the Employer, will make the best employee and the Employer shall be the sole judge of the fitness of any applicant for the job.

F. Employees will be allowed to enroll in the Credit Union offered by the Company. If the Employer fails to remit credit union deposits withheld from employees' wages to the credit union within seven working days after payday, the Employer shall pay affected employees a penalty of 25% of the deposit for every day the money is not remitted to the credit union. Additionally, the Employer shall be liable for all late fees and penalties, and bounced check fees incurred by the employees as a result of the Employer's failure to promptly remit the deducted funds to the credit union.

**SECTION 5**          **COPE CHECK OFF**

The Employer will also honor written assignment of wages to the Union for the payment of

2

voluntary contributions to the Union's Committee on Political Education (COPE) fund, when such assignments are submitted in a form agreed to by the Employer and the Union, and will remit such contributions to the Union in accordance with the procedures set forth in Section 4 Union Membership of this Agreement dealing with the deduction and remittance of Union dues above.

**SECTION 6**             **UNION REPRESENTATIVES**

A. A duly authorized Union Field Representative shall be allowed to visit the premises of the Employer for the purpose of ascertaining whether this Agreement is being observed. This privilege shall be exercised reasonably. The Field Representative shall report to the Administrator at the time of any visit and shall not interfere with the normal conduct of work. He/she will be allowed to meet with an employee in a designated area at the time of the employee's normal break periods.

B. The Union shall be permitted to maintain shop stewards on the job to receive and process complaints and grievances. The receipt and processing of complaints and grievances shall not be handled during the working time of the shop steward or employee involved without the permission of the supervisor and shall not interfere with the normal conduct of work. The Union shall notify the Employer of the names of employees appointed as shop stewards.

C. The Employer will make a bulletin board available in each employee break room for use by the Union. The bulletin board shall be no smaller than ten square feet.

**SECTION 7**             **DISCHARGES AND DISCIPLINE**

A. The Employer shall have the right to discipline suspend or discharge any employee for proper cause in accordance with the facility's reasonable house rules and employee handbook. No counseling session shall be deemed to constitute discipline under this Article and no such counseling shall be a grievance matter.

B. Warning notices shall remain in an employee's record (file) for twelve (12) months from the date of issuance; however, all warning notices will be removed after twelve (12) months from date of issuance.

C. The Employer recognizes the concept of progressive discipline and will endeavor to utilize a progressive discipline response in cases of poor work performance, and violation of house rules. However the nature and severity of an offense will permit imposition of disciplinary action at any level of discipline. In the event of a conflict, this Agreement will take precedence over house rules.

D. The Employer shall furnish a copy of each warning notice to the employee and shop steward. The employee shall indicate on the face of any warning notice received an acknowledgment by their signature that they have received such copy; however, in so signing, no implication of admission to facts of the offense or guilt may be drawn. The Employer will furnish copies of notices regarding suspensions or terminations to the Union.

E. The Employer shall provide employee warning notices either in private or to the employee in a sealed envelope. Should an employee specifically so request, that employee may have a shop steward or another employee witness present during any disciplinary action.

3

F.  The Employer shall effect disciplinary action no later than five (5) workdays from the date of discovery of an offense and investigation of such an offense.

## SECTION 8          HOURS OF WORK

A.  A straight-time day's work shall consist of not more than eight (8) hours and the straight-time workweek shall be not more than forty (40) hours, five (5) days per week.

If an employee is required to work in excess of the straight-time workday or workweek, he/she shall be paid overtime at the rate of time and one-half (1-1/2). An employee who works in excess of twelve (12) consecutive hours shall be paid at two (2) times his/her straight-time hourly wage for all hours worked in excess of twelve (12) hours.

Each employee shall receive two (2) consecutive days off each week, provided that the days off may be split or rotated by mutual agreement without penalty. Any full-time employee who works on a sixth (6th) consecutive day in a workweek will be paid at the rate of time and one-half (1-1/2). In no event will an employee be scheduled to work more than six (6) consecutive days in a workweek.

If an employee is required to work for seven (7) consecutive days, he/she shall be paid at the rate of double (2x) time for such seventh (7th) day.

Notification to the Union shall be given prior to any drastic reduction of employees due to a lowered operating census. Where three (3) or more employees would be affected by either a cutback in employees or a cut in hours, the Employer will notify the Union in advance.

Part-time employees shall be eligible for the overtime rate of time and one half (1-1/2) if they have worked more than thirty (30) hours in the same workweek as the seventh (7th) consecutive day occurs.

B.  Eight (8) hours of work performed within a spread of more than nine (9) hours shall constitute a split shift and shall be compensated by the payment of one additional hour of pay at the employee's straight-time hourly wage rate.

C.  No employee shall be required to work more than eight hours in a day, or on his/her day off, or in excess of their regularly scheduled hours.

D.  A schedule of starting and quitting times and days off shall be posted on the bulletin board available to all employees at least two weeks in advance of the first day on the schedule. Once posted, the schedule may not be changed without the consent of the affected employee(s).

E.  Overtime and additional hours shall be distributed by seniority to employees who have volunteered to work overtime and additional hours. The overtime and additional hours sign-up list will be posted for employees to sign up at the same time as the schedule is posted. The Employer shall assign available hours first to employees for whom the additional hours would be paid at straight-time; then to employees for whom the additional hours would be paid at time and a half; and then to employees for whom the additional hours would be paid at double time.

F.  An employee who reports to work as scheduled will be guaranteed four (4) hours pay at straight-time for reporting as scheduled if work is not provided by the Employer, unless the employee's schedule is understood to call for a shift of less than four (4) hours, in which case

4

the employee will be paid for scheduled hours only. If such employee reports to work as scheduled and works in excess of four (4) hours, the employee will be guaranteed eight (8) hours pay at straight-time if work is not provided by the Employer, unless the employee's schedule is understood to call for a shift of less than eight (8) hours, in which case the employee will be paid for scheduled hours only. In cases where the employee is entitled to overtime the employee will receive overtime at the rate of time one and one-half (1 ½) for actual hours worked or the appropriate guarantee, whichever is higher.

G. The Employer shall retain the right to determine work schedules. If the Employer intends to change the work scheduling method, the Employer shall give at least thirty (30) days notice to the Union and meet with the Union upon request to discuss such change. The Employer will consider a request from a majority of the employees in a department or shift to change the method of scheduling. A scheduling change under this paragraph shall not be subject to the grievance procedure set forth in Section 28.

H. If an employee is called to work and the Employer fails to give at least one (1) hour's notice before the start of the shift, and the employee reports to work within sixty (60) minutes, the employee will be paid for the full shift.

## SECTION 9        DAYS OFF

Notwithstanding any other provision of the Agreement, any regular employee who works on his/her regularly scheduled day off will be paid at the overtime rate of one and a half times their straight-time hourly wage rate provided s/he has worked all his/her scheduled workdays in the workweek. Any regular employee who works on his/her second consecutive regularly scheduled day off will be paid at the overtime rate of two times their straight-time hourly wage rate provided s/he has worked all his/her scheduled workdays in the workweek.

An employee may be permitted to switch days off with another employee provided the Employer's permission is granted and no penalty to the Employer is involved. The Employer will exercise its best efforts in the administration of this clause to accommodate the employee's request.

## SECTION 10        NIGHT DIFFERENTIAL

A shift differential of thirty-five cents ($0.35) per hour shall be granted to all employees regularly working a night or evening shift commencing at or after 2:00 p.m. and prior to 6:00 a.m.

## SECTION 11        WAGES

A. Wage rates and classifications are attached as Appendix "A." The parties agree that the rates shown in Appendix "A" of this Agreement are minimum rates and nothing in this Agreement shall prohibit the Employer from paying higher than the rates shown.

B. Culinary employees shall be entitled to meals, in addition to their regular wages, provided that there shall be no interruption of work schedules.

C. Employees relieving an employee in a higher classification will be paid at the rate for the higher classification, for all hours worked in the higher classification.

5

D. All employees who in the past have enjoyed rates above the minimum for the classifications listed in Appendix "A" shall have such differential maintained above all present and future wage increases and existing benefits shall also be maintained for the duration of this Agreement.

E. All eligible employees shall receive their tenure increases on their anniversary date.

F. Employees' paycheck stubs shall include their current accrued vacation and accrued sick leave.

## SECTION 12        PAID VACATION

A. Regular Full-time employees shall be granted annual paid vacation as follows:

- After the first (1st) year of continuous employment, one (1) week (five [5] working days) of vacation with pay;
- After the second (2nd) year of continuous employment, two (2) weeks (ten [10] working days) of vacation with pay;
- After the fifth (5th) year of continuous employment, three (3) weeks (fifteen [15] working days) of vacation with pay;
- After the eighth (8th) year of continuous employment, four (4) weeks (twenty [20] working days) of vacation with pay;
- Employees with fifteen (15) years of service shall be entitled to five (5) weeks (twenty-five [25] working days) of vacation with pay.

B. Regular Part-time employees are entitled to pro-rated vacation.
- Employees shall be entitled to pro-rated vacation pay upon termination for any reason.

C. The Employer will make every effort to schedule vacations throughout the calendar year.

D. Upon written request, at least one (1) month in advance, and upon mutual agreement between employee and Employer, an employee shall receive up to fifteen (15) working days leave of absence.

## SECTION 13        HOLIDAYS

A. The following days shall be recognized as paid holidays for Regular employees, provided that the employee has been on the payroll ninety (90) days prior to the holiday:

| | |
|---|---|
| New Year's Day | Labor Day |
| Martin Luther King, Jr. Day | Thanksgiving Day |
| Presidents' Day | Christmas Day |
| Memorial Day | Floating Holiday* |
| Independence Day | Employee's Birthday* |

6

\*An employee's birthday and floating holiday shall be paid holidays for all employees with at least one (1) year of service with the Employer.

B. If an employee is required to work any of the aforementioned holidays, he/she will be paid at the rate of straight-time for all hours worked in addition to another day off, with pay, within sixty (60) days after the holiday or, at the employee's option, another day's pay in lieu thereof. Employees who work on New Year's Day, Thanksgiving Day, or Christmas Day will be paid at the overtime rate of one and a half times their straight-time hourly wage rate, and will have the option of taking another day off with pay or receiving a day's pay within sixty days following the holiday worked.

C. If a holiday falls on the employee's regular day off, he/she shall be granted another day off, with pay, within sixty (60) days after the holiday or, at the employee's option, another day's pay in lieu thereof.

D. If a holiday falls within an employee's vacation time, one (1) day, with pay, shall be added to his/her vacation time.

E. Any accrued holiday time with pay, to be added to his/her vacation time, shall be paid to the employee in the event of resignation, termination or layoff prior to vacation.

F. In order for an employee scheduled off on a holiday (other than Thanksgiving, Christmas or New Year's Day) to be eligible for holiday pay, the employee must work his/her last scheduled day before and first scheduled day following the holiday, unless excused by the Administrator.

G. In order for any employee to be entitled to the holiday benefit for Thanksgiving, Christmas and New Year's Day, he/she must work the holiday, if scheduled, and must work all regularly scheduled shifts during the workweek in which Thanksgiving, Christmas or New Year's Day fall. It is not the intention of the Employer to deprive any employee of holiday pay for failure to work all scheduled shifts in the workweek in which the holiday falls, under circumstances where said employee's failure to work is the result of either illness proven by a doctor's certificate or the employee being sent home by the Employer on account of illness.

## SECTION 14          HEALTH INSURANCE

A. Effective on the first day of the month following completion of ninety (90) days of employment, all regular full-time and regular part-time employees shall be eligible to enroll in the health plan. The coverage shall be provided through the Health Care Employees/Employers Health and Welfare Trust, and shall consist of Kaiser Permanente Plan (Group Number 36301-0003 ($10.00 [ten dollar] office co-pay, [$0.00] hospital co-pay, $5.00 [five dollar] prescription co-pay, 20% DME, $50.00 [fifty dollar] Emergency Room, $50.00 [fifty dollar] Ambulance, $175.00 [one hundred seventy five] Optical Allowance).

B. The Employer will pay a percentage of the required monthly premium for employee-only coverage as follows:

| High Street and Mac Arthur | Percentage |
|---|---|
| Less than 2 years of service - | 65% |
| 2 or more, but less than 10 years of service | 90% |
| 10 or more years of service | 100% |

7

C. Eligible employees may enroll their spouse, dependents or domestic partners at their own expense. Employees paying a portion of the required monthly premium shall do so through payroll deduction.

D. The Employer shall remit the required monthly premiums to the Trust in a timely fashion so as to ensure continued coverage for eligible employees.

E. The Employer will inform new employees of the availability of health insurance at the time of hire and at the time of initial eligibility. Those employees electing coverage will be covered as provided in subsection A above. Those employees declining coverage will be required to sign a waiver indicating that health insurance was offered by the Employer and declined by the employee.

F. The Employer agrees to assume all costs in regard to annual physicals, tests, and x-rays, as long as the employee utilizes the Employer's contracted physician. If the employee chooses to use his/her personal physician, the Employer will only reimburse the employee for the amount the Employer would have incurred through the Employer's contracted physician. However, if reasonable notice is given to the employee of the time and place for a physical examination and x-ray, an employee's failure to attend, without an acceptable reason deemed by the Employer, shall be grounds for dismissal.

### SECTION 15          DENTAL INSURANCE

A. Effective on the first day of the month following completion of one hundred and eighty (180) days of employment, all regular full-time and regular part-time employees shall be eligible to enroll in the dental plan. The coverage shall be provided through the Health Care Employees/Employers Dental Trust, and shall consist of Delta Dental Plan VI (Diagnostic and Preventive 80%; Other Basic 80%; Crowns and Casts 80%; Prosthodontics 50% - 12 month wait; $50 initial deductible; maximum yearly benefit $1000).

B. The Employer will pay a percentage of the required monthly premium for employee-only coverage as follows:

**High Street and Mac Arthur**

All Employees – 65%

C. The Employer shall remit the required monthly premiums to the Trust in a timely fashion so as to ensure continued coverage for eligible employees.

D. The Employer shall inform new employees of the availability of dental insurance at the time of hire and at the time of initial eligibility. Those employees electing coverage will be covered as provided in subsection A above. Those employees declining coverage shall be required to sign a waiver indicating that dental insurance was offered by the Employer and declined by the employee.

8

**SECTION 16            PENSION PLAN**

Effective June 1, 1999, the Employer agrees to become and remain a participating Employer in the Service Employees International Union National Industry Pension Fund.

### A. Coverage

The Employer agrees to make periodic contributions on behalf of eligible employees covered by this Collective Bargaining Agreement to the Service Employees International Union National Industry Pension Fund, hereinafter referred to as the "Fund".

### B. Terms

The Employer agrees to become and remain a participating Employer in the Fund throughout the term of this Collective Bargaining Agreement, including any extension thereof.

### C. Contributions

1. Commencing on June 1, 1999, the Employer shall contribute to the Fund in the amount of $0.15 (fifteen cents) per compensated hour to a maximum of 173 hours per month, for all eligible employees covered by this Collective Bargaining Agreement.

2. Commencing on August 1, 2000, the Employer shall contribute to the Fund in the amount of $0.35 (thirty-five cents) per compensated hour to a maximum of 173 hours per month, for all eligible employees covered by this Collective Bargaining Agreement.

3. Commencing on March 11, 2006, the Employer shall contribute to the Fund in the amount of $0.35 (thirty-five cents) per compensated hour, for all eligible employees covered by this Collective Bargaining Agreement.

4. Contributions required by this provision shall be paid to the Fund on or before the fifteenth (15th) day of the month following the period for which contributions are due, or on or before such other date as the Trustees may hereafter determine.

5. Contributions shall be transmitted together with a remittance report containing such information, in such manner, and on such form as may be required by the Trustees of the Fund or their designee.

6. Notwithstanding any other provision of the Agreement, contributions shall be made on behalf of all full-time and part-time employees who have completed 90 days of employment. Upon completion on 90 days of employment by an eligible employee, the Employer shall begin making the required contribution effective on the 91st day of employment. Fpr temporary or casual employees, contributions shall be made on behalf of employees who have worked, or been compensated for, one thousand (1000) hours or more during any twelve month period. Whenever a temporary or casual employee has worked or been compensated for one thousand (1000) hours or more during such twelve month period, the Employer shall, on the date on which its next monthly contributions are due, make contributions retroactively to the 91st day of

9

the twelve month period for all hours worked. Thereafter, contributions shall be made for such employee irrespective of the number of hours worked, or for which compensation was received, in subsequent years. Until contributions are required to be made on behalf of an employee pursuant to the terms of this provision, the employee shall not be deemed to be a covered employee working in covered employment within the meaning of the SEIU National Industry Pension Plan. All employees who previously were participants in the pension plan sponsored by the Employer or its predecessor by virtue of completing the above required shall be deemed to be participants under the SEIU National Industry Pension Plan and have contributions made on their behalf to the Fund for all compensated hours without the necessity of meeting any additional eligibility requirement.

### D.  Trust Agreement

The Employer hereby agrees to be bound by the provisions of the Agreement and Declaration of Trust establishing the Fund, as it may, from time to time, be amended, and by all resolutions and rules adopted by the Trustees pursuant to the powers delegated to them by that Agreement, including collection policies, receipt of which is hereby acknowledged.

The Employer hereby designates the Employer Members of the Fund's Board of Trustees, or their duly selected successor(s), as its representatives on the Board.

### E.  Cooperation

The Employer and Union agree to cooperate with the Trustees of the Fund in distributing Plan booklets, literature and other documents supplied by the Fund Administrator and in obtaining and providing such census and other data as may be required by the Fund's Administrator or Trustees to enable them to comply with the applicable provisions of the Employee Retirement Income Security Act (ERISA).

### F.  Approval By Trustees

The undersigned parties acknowledge that the provisions of this Article and the participation of the employees covered by it are subject to approval by the Trustees of the Fund and that the Trustees reserve the right to terminate, at their sole and unreviewable discretion, the participation of the employees covered by this Agreement and to establish the level(s) of benefits to be provided.

Termination may be directed by the Trustees for reasons including, but not limited to, failure of the Employer to timely pay contributions and expiration of the Collective Bargaining Agreement.

The parties further acknowledge that the Trustees' acceptance for participation in the Fund of the employees covered by the Collective Bargaining Agreement is limited only to the categories of employment covered by the Collective Bargaining Agreement at the time application for acceptance occurs and the admission of other categories of employment to participate in the Fund will require specific acceptance by the Trustees.

10

**SECTION 17**            **SICK LEAVE**

A. Each regular full-time employee shall accrue one (1) day of paid sick leave for each calendar month of employment, commencing with the first month of employment. Regular part-time employees shall accrue paid sick leave on a pro-rated basis. Sick leave shall accrue to a maximum of thirty-five (35) paid workdays.

B. An employee shall not be entitled to use paid sick leave until he/she has been continuously employed for six (6) calendar months.

C. The payment of sick leave shall commence with the first (1st) day of each illness for employees with one (1) or more years of credited service. The payment of sick leave shall commence with the second (2nd) day of each illness for employees who have less than one (1) year of service.

D. The Employer may only request a doctor's certificate as a condition of paying sick leave when there has been a clear pattern of excessive sick leave use (more than one day per month for three consecutive months, or more than three days in any one month). Employees may not be disciplined for any absence due to illness.

E. Employees who inquire shall be told, within forty-eight (48) hours, the amount of sick leave and/or vacation to which they are entitled. It is understood that this privilege shall not be abused and that the answer given shall not be controlling over a different calculation arrived at by the Employer's corporate payroll department.

F. Unused sick leave is not convertible to cash.

G. Sick leave shall be integrated with State Disability Insurance benefits or Workers' Compensation benefits so that the total of daily benefits shall not exceed a straight-time day's pay.

H. Any employee who works all his/her scheduled shifts in a calendar month shall receive a bonus of $20 (twenty dollars) to be paid on the second payday of the following month.

**SECTION 18**            **MEAL AND REST PERIODS**

A. All employees who work a shift of five or more hours shall be entitled to an unpaid meal period of at least 30 minutes as close to the middle of their shift as possible. Employees on their unpaid meal period are considered 'off-duty', and the Employer may not require such employees to remain on the premises. Licensed personnel on the P.M. and Nightshifts who are required by the Employer to remain on the premises during their 30 minute meal period shall be paid for the meal period.

B. All employees shall be granted a rest period of 15 minutes during each half shift without deduction in pay. In addition to the rest period, each employee will be granted five minutes of 'travel time' at each rest period. The rest period shall occur as near the middle of each half-shift as possible.

C. All employees scheduled to work four or more hours of overtime in one day shall, in addition to the rest periods in A and B above, be granted a paid rest period of at least 15 minutes at the conclusion of eight hours of work, and a paid rest period of at least 15 minutes at the

11

conclusion of ten hours of work. If the overtime will exceed six hours, the employee shall be entitled to 30 minute paid meal period at the conclusion of twelve hours of work; and when an employee works a double shift, the employee will be granted a final paid rest period of 15 minutes at the conclusion of 14 hours if work. There will be flexibility in the scheduling of all break periods herein outlined so that not all employees are on break at the same time, and there are sufficient staff on the floor.

D. Managers and supervisors may not interrupt employees' meal and rest periods except in the case of emergency, which shall be defined as an event or condition requiring the presence of the police, fire department, or EMS personnel, or other dire (stat) patient emergency. Any employee required to work during the meal and rest period due to an emergency will be allowed to make up the missed meal period or rest period time by the end of the shift.

## SECTION 19    NO DISCRIMINATION

The Employer and the Union agree that neither the Union nor the Employer shall discriminate with respect to employment or conditions of employment by reason of Union activity, race, creed, color, national origin, age, sex, sexual orientation, marital status, physical disability (including pregnancy), or medical condition.

## SECTION 20    PAYDAYS

A. Paydays shall be on the 10th and 25th of each month. Any errors of $50.00 (fifty dollars) or more in employees' paychecks will be corrected within four working days. Errors of less than $50.00 will be corrected on the next paycheck.

B. The Employer shall exert its best efforts to have paychecks for night shift employees available at the end of their shift on payday and paychecks for the balance of employees by 9:30 a.m. or the first coffee break on payday. Day shift and P.M. shift employees who are scheduled for a day off on a regular payday (every other week) will have paychecks made available before the end of shift on the day before each payday.

C. When payday falls on Saturday or Sunday, the Employer will exert its best efforts to provide paychecks on the proceeding Friday by 11:00 a.m. The workweek for pay purposes shall extend from Sunday 12:01 a.m. to Saturday 12:00 midnight.

D. If the Employers' paychecks are not honored by the bank due to insufficient funds, the Employer will reimburse affected employees for any bounced check fees and for any late charges incurred by the employees as a result.

## SECTION 21    CATEGORIES OF EMPLOYEES

A. Regular full-time

Regular full-time employees are those who work an average of 35 or more hours per week. Regular full-time employees shall be entitled to all fringe benefits as provided for in this Agreement.

B. Regular part-time

Regular part-time employees are those who work an average of 22 or more, but less than 35 hours per week. Regular part-time employees shall be entitled to participate in the health and dental insurance on the same basis as full-time employees; pension plan participation as provided for in Section 16. - Pension Plan and Appendix B; and to pro-rated paid vacation, paid holidays, and paid sick leave.

C. Short Hour

Short hour employees are those with regular schedules of fewer than 22 hours per week.

D. Casual/On-call

Casual or On-call employees are those without regular schedules who work on an intermittent basis.

E. Temporary

Temporary employees are those who are employed for a regular schedule or for a specific assignment not to exceed 60 calendar days.

F. Short hour, Casual/On-Call, and Temporary

Employees are not entitled to any contractual fringe benefits, but shall be entitled to shift differentials when applicable, and shall receive a differential in-lieu-of benefits of $1.00 per hour in addition to their straight-time hourly wage rate.

G. The Employer shall hire employees on the basis of full-time employment in light of the available work, and will limit the use of short hour, casual/on-call, and temporary employees to a minimum, and upon the specific written request of employees and subject to approval by the Union.


**SECTION 22         SENIORITY**

A. In matters of lay offs and recalls, the principle of seniority within classification shall prevail, provided, however, that more senior employees may be considered for positions held by less senior employees in other classifications, if they can perform the job without training or education. In the event of reductions of hours, such reduction will be by seniority.

New or Open Positions

All new or open positions covered by this Collective Bargaining Agreement shall be posted and awarded by seniority and posted for five days on the facility bulletin boards.

B. In matters of promotions, the principle of seniority shall prevail, provided merit and ability are equal, as judged by the Employer. The Employer shall not be arbitrary or capricious in its judgment of merit and ability.

C. It is understood that none of the provisions of this Section or its application shall entail a "bumping" procedure. (Lay offs shall be evaluated on a departmental basis, and not by shift. The least senior employees in a department are laid off first and replaced with the remaining more senior employees.)

D. A regular employee' s seniority is defined as his/her most recent period of continuous service with the Employer.

13

E.  An employee's seniority shall be lost in the following instances:

1.  When an employee quits voluntarily.

2.  When an employee is discharged for cause.

3.  When an employee fails to return to work or notify the Employer of his/her intention to return to work within a reasonable period of time not to exceed seven (7) calendar days from receipt of notice of recall from lay off sent to the employee at the address on file with the Employer.

4.  When an employee does not perform any work for the Employer for a period of one year.

## SECTION 23          LEAVES OF ABSENCE

A.  Application for a leave of absence shall be made in writing by an employee requesting leave and, if approved, will be approved in writing. Any denials will also be in writing. Authorized leaves of absence for any purpose shall not affect previously accumulated sick leave, vacations, seniority or tenure, except as provided for in Paragraph (E) of this Section; but no benefits will accrue, except as otherwise provided herein, during such leave of absence period.

B.  Regular employees with six (6) months or more of continuous employment shall be granted a leave of absence, without pay, of up to six (6) months in cases of physical disability occurring on the job, upon presentation of medical certification. Regular employees with less than six (6) months of service shall be granted a leave of absence without pay, for up to four (4) months in cases of physical disability due to pregnancy, upon presentation of medical certification. Regular employees with six (6) months or more of continuous service shall be eligible for up to twelve (12) months' leave of absence, without pay, for disabilities occurring on the job. Upon medical certification, such leaves may, upon request by the employee and solely at the Employer's option, be extended up to an additional six (6) months. It is understood that this Section shall not be interpreted as a limitation on the Employer's right to discipline employees for excessive absenteeism.

C.  The Employer shall comply with all applicable State and Federal Laws regarding the Family Medical Leave Act (FMLA).

D.  Emergency leave of absence of up to thirty (30) days may be granted to employees with one (1) year or more of employment. The Employer shall consider the situation of the employee and shall not unreasonably deny such a leave.

E.  No leave of absence shall result in any adjustment of an employee's original date of hire (i.e., anniversary date).

F.  Leaves of absence may be extended beyond the above-specified limits for just cause, upon mutual agreement between the Employer and the employee.

G.  Any employee who returns from an authorized leave of absence shall be placed in his/her same classification. Any employee who returns from an authorized medical leave of absence shall be placed in his/her same classification and shift. However, it is understood that the Employer shall be under no obligation to place said employee in his/her same classification and shift or otherwise retrain an employee to work prior to the expiration date of the original leave of absence.

14

H.  A shop steward with more than one (1) year of service may request a leave of absence for up to two (2) weeks to work on Union-related activities. Requests must be submitted not less than thirty (30) days prior to the beginning of the leave.  The granting of the leave is at the discretion of the Employer, based on the needs of the facility.  No request will be unreasonably denied.

## SECTION 24          BEREAVEMENT LEAVE

When a death occurs in the immediate family of a regular employee, he/she shall be entitled to a leave of absence, with pay, of three (3) days, if the funeral occurs within 300 miles of the facility, and an additional two (2) days, which shall be deducted from accrued sick leave, if the funeral occurs more than 300 miles from the facility.

The Employer may require proof of attendance and relationship, if a reasonable doubt exists, before granting paid leave in accordance with this Section.  Immediate family is defined as spouse, sister, brother, son, daughter, parent, grandparent, mother-in-law, father-in-law, grandchild.

## SECTION 25          NO STRIKE OR LOCKOUT

There shall be no strike by the Union and no lockout by the Employer during the term of this Agreement, or any extension thereof.

## SECTION 26          JOB DESCRIPTIONS

The Employer shall maintain job descriptions for those employees covered by this Agreement. Copies shall be made available to the Union.

## SECTION 27          LIMITED/LIGHT DUTY

An employee who has suffered a temporary disability or on-the-job injury may be placed on modified/light duty, if a physical indicates that the employee can handle and will benefit from modified work and the physician indicates that the employee will be released to resume full duties within ninety (90) days.

Temporarily disabled employees working under limited/light duty restriction will be paid at the rate of one hundred percent (100%) of the employee's current straight-time rate of pay for such hours worked or the minimum required by the State, whichever is greater.

No employee shall be required to perform tasks which are contrary to his/her medical restrictions.

## SECTION 28          GRIEVANCE PROCEDURE

**Definition**
A grievance shall be defined as a claimed violation of specific provision or provisions of this Agreement and will be handled in the following manner; provided, however that any grievance arising out of the exercise of the rights set out in Section 2, Management Rights, shall not be the subject of a grievance or arbitration, except to the extent that these rights are otherwise limited by the terms of this Agreement.

15

Grievances arising as to the interpretation or application of this Agreement shall be handled in the following manner:

Step I

It is understood that an employee has no formal grievance until he/she or an authorized Shop Steward has discussed such complaint with his/her immediate supervisor with fifteen (15) working days from the date of the event giving rise to the concern, or the date the event became known.

The immediate supervisor will give the affected employee(s) or the Shop Steward his/her Step I response within three (3) working days of the Step I meeting. The Step I response will settle the matter, unless appealed to Step II.

**Step II**

If the matter is not resolved at Step I, it shall be reduced to writing and submitted to the facility Administrator with seven (7) working days of the Step I response or seven (7) working days from the time the immediate supervisor should have responded in Step I.

The written grievance shall contain all pertinent information including name of employee(s), the date of the incident, the Section of the Agreement alleged violated and the remedy sought.

The Union Field Representative or the Shop Steward and the facility Administrator shall arrange a mutually agreeable date to meet within ten (10) working days from the receipt off such grievance for the purpose of attempting to settle the matter.

The facility Administrator shall respond to the written grievance in writing within five (5) working days following the meeting. The Step II response will settle the matter, unless appealed to Step III.

**Step III**

If the parties are unable to resolve the dispute through the foregoing procedure, either party may request, in writing, within ten (10) working days of the Step II response or lack of response, that the matter be referred to the Director of Human Resources or designee.

Upon receipt of the written Step III grievance request, the Employer's Director of Human Resources and the Union Field Representative shall schedule a meeting at the earliest possible mutually agreeable date in an attempt to resolve the matter.

The decision of the Director of Human Resources or designee will be delivered, in writing, within ten (10) working days following the date of such meeting.

The Director of Human Resources' Step III response will resolve the matter, unless it is forwarded to arbitration, as identified herein.

**Step IV – Arbitration**

Either the Union or the Employer may request arbitration of a grievance which remains unresolved by serving a written demand for arbitration upon the other within ten (10) working days from the date of the procedures described in Step III, above, and by requesting a panel from the Federal Mediation and Conciliation Service.

No alleged violation of the Agreement or claim for relief shall be submitted to arbitration unless it has been raised in a timely fashion, filed and submitted in accordance with the procedure identified in the preceding sections, unless the parties agree otherwise.

The arbitrator shall be selected by alternate striking from the list requested from and furnished by the Federal Mediation and Conciliation Service.

In rendering a decision, the arbitrator shall be governed and limited by the provisions of this Agreement and the expressed intent of the parties as set forth in this Agreement. The arbitrator shall have no power to add to, subtract from or modify any of the terms or provisions of this Agreement and shall consider and resolve only such issues as are raised by the written grievance.

The decision of the arbitrator shall be final and binding upon both parties hereto and upon the employee or employees covered; however, the arbitrator shall not make an award outside the scope of the authority outlined herein, a change, modification or addition to this Agreement, and shall confine judgments strictly to the facts submitted in the hearing, the evidence before him/her and the terms and provisions of this Agreement.

The expense of the arbitrator shall be borne equally by the parties. The total cost of any stenographic record which may be made or transcripts thereof shall be paid by the party ordering same, unless the parties jointly agree otherwise.

### Time Limits and Additional Administrative Provisions

A. Grievance settlements reached in Step I or Step II shall not establish a precedent for either party, unless mutually agreed to in writing.

B. With the exception of discharge, which will be filed at Step II within ten (10) working days of the discharge, all grievances must be processed through the aforementioned procedure prior to a request for arbitration being made or honored.

C. The time limits as set forth in this Section may be extended by mutual agreement between the parties. If such extension is verbal, there shall be written confirmation of such extension by the party requesting the extension.

D. If either party does not respond within the specified time limits, the other party may proceed to the next step. Any matter not appealed within the specified or mutually extended time limits shall be considered untimely.

**SECTION 29        NOTICE OF TRANSFER,       ASSIGNMENT, OR SALE**
In the event of a sale, transfer or assignment or any other disposition of the Convalescent Hospital herein, the Union will be given sixty (60) days' written notice by the Employer.

**SECTION 30        SAVINGS CLAUSE**

If any provision of this Agreement or the application of such provision to any person or circumstance is ruled contrary to law, by any Federal or State Court or duly authorized agency, the remainder of this Agreement or the application of such provision to other persons or circumstances shall not be affected thereby.

**SECTION 31        WORKLOAD DISTRIBUTION**

A. The Employer shall distribute the workload equitably among employees.

B. The Employer's intention is that there shall always be sufficient staff at the facility so that employee workloads are reasonable, consistent with resident/patient needs and acuity and

17

employee health and safety. Every effort will be made to replace all staff who are counted in meeting sufficient staffing levels to meet resident needs.

C.  The Employer recognizes a division of labor between housekeeping, dietary, laundry, nursing and other departments.

D.  Based on census and acuity, it is the intention of the Employer to replace a scheduled employee who is absent for any reason, by calling employees who have volunteered for additional work or overtime.

E.  It is the Employer's intention to comply with Federal and State law at all times.

F.  A worker shall have the right to refuse to perform work under conditions that pose an imminent danger to their health and safety or the health and safety of others. In the event of a dispute over what constitutes 'imminent danger,' the Union Shop Steward will immediately meet with the employee and the supervisor to resolve the situation in a constructive manner. Any further dispute shall be subject to the Grievance and Arbitration procedure set forth in this Agreement.

**SECTION 32          EDUCATIONAL LEAVE/LVNs**

The Employer shall provide, according to State Law, any required in-service training at the facility for non-licensed personnel. A Licensed Vocational Nurse (LVN) with one (1) year or more of continuous service shall be entitled to sixteen (16) hours of paid education leave per year. Anyone requesting leave under this Section must show proof of attendance at a class or seminar.

**SECTION 33          JURY DUTY**

A regular full-time or part-time employee called for jury duty will receive the difference between jury pay or witness fees and normal straight-time earnings, with a limit of ten (10) working days. An employee must provide a receipt from the Jury Commissioner that he/she has been called or served on jury duty.

Jury pay shall be granted, provided the employee notifies the Administrator immediately upon notification that he/she will be required to perform jury duty service, presents proof of service requiring the employee's attendance and deposits with the facility the jury duty fees, except mileage.

**SECTION 34          EMPLOYEE RELOCATION**

A.  In the event of a closure or sale of a facility covered by this Agreement, the employees displaced shall have the right over any and all outside applicants to transfer from the facility to the other Trinity facilities in Northern California which are under contract to UHW provided:

    1.  An opening for the position requested exists;

    2.  Subject to approval of the new Administrator;

18

3. Such approval shall be set forth in writing between the employee and the Employer.

B. When the conditions in paragraph A, 1, 2 and 3 have been met and upon the Administrator's approval of such a relocation request, the new facility shall waive the probationary period for said employee and grant full seniority and other contractual benefits earned and accumulated by such employee at this facility.

C. The employee must agree to employment at the pay and benefit rate prevailing at the new facility.

## SECTION 35          TRAINING AND IN-SERVICE

A. When in-service educational programs are provided for employees covered under this Agreement, the Employer will use its best efforts to ensure that the program sessions are available to all employees on all shifts at the facility. Such training sessions are to be scheduled during an employee's scheduled work time. No employee will be penalized for not attending any session during his/her regular time off, provided that it is made up at a future date. Off-duty employees will be paid at their regular rate of pay with overtime paid, if applicable, for time spent in attendance at such in-service sessions.

B. The Employer shall ensure that all employees are fully trained to perform the skills required for quality resident care and are trained and regularly kept current on resident rights, DHS regulations, safety and health matters, and other issues in the interest of nursing home residents.

C. The Employer recognizes that back injuries are a serious hazard in a long-term care facility. The Employer agrees to establish a strong ergonomics program to protect employees from stresses that cause back injuries. This program will include, but is not limited to, a written ergonomics program, work site analysis, properly maintained lifting equipment to prevent patient and employee injuries, hazard prevention and administration controls, a medical management program for worker injuries, and training and education.

D. The Employer shall maintain the strongest feasible program to protect workers and residents from infections and communicable diseases. The Employer further agrees to supply training, protective equipment and vaccines, including hepatitis B vaccine, to workers who are at risk of exposure to infectious diseases. The Employer will comply with all OSHA regulations and Public Health Service recommendations concerning infections and blood-borne diseases.

## SECTION 36          ORIENTATION DUTY PAY

Employees assigned by the Employer to orient a new employee shall be paid an orientation differential of $0.20 (twenty cents) per hour for all hours spent orienting the new employee.

## SECTION 37          SAFETY COMMITTEE

The Employer shall establish a safety committee which is representative of all departments, including Certified Nurse Assistants to investigate any hazardous conditions which may exist and

19

make recommendations to assure the safety and health of the employees, patients and visitors.

**SECTION 38        LABOR-MANAGEMENT COMMITTEE**

A. Effective upon the signing of this Agreement, a Joint Labor-Management Committee, with an equal number of representatives from both sides, will be established. Appropriate matters for consideration by this Committee are the following:

  1. Ways and means for providing better patient care;

  2. Joint participation in recruiting competent personnel;

  3. Improving labor-management relations in order to minimize the volume of unnecessary complaints or grievances; and

  4. Any subject related to the foregoing.

B. Two- (2) weeks' notice of a meeting shall be given by the requesting party.

C. This Section is not subject to the grievance procedure.

**SECTION 39        IMMIGRATION AND PRIVACY RIGHTS**

A.    The Union is obligated to represent all employees without discrimination based upon national or ethnic origin. The Union is therefore obligated to protect employees against violations of their legal rights occurring in the workplace, including unreasonable search and seizure.

B.    The Employer shall notify the Union by phone and give oral notice to the Union steward as quickly as possible, if any I.N.S. agent appears on or near the premises to enable a Union representative or attorney to take steps to protect the rights of employees. Additionally, the Employer shall notify the Union immediately upon receiving notice from the I.N.S. or the SSA that an audit of employee records (for any purpose) is scheduled, proposed or contemplated and shall provide the Union with any list received from such governmental agencies identifying employees with documentation or social security problems.

C.    The Employer shall notify affected employees and the Union in the event if furnishes private information to the I.N.S. upon its request.

D.    Any employee who is absent form work due to court or agency proceedings relating to immigration matters and who returns to work within thirty (30) working days of commencement of the absence and who presents documentation of appearance at such proceedings shall be reinstated to the position held by the employee prior to his or her absence.

E.    An employee may not be discharged or otherwise discipline because:

  1.    The employee (hired on or before November 6, 1986) has been working under a name or social security number other than their own;

2.   The employee (hired on or before November 6, 1986) requests to amend his/her employment record to reflect his/her actual name or social security number;

3.   The employee (hired on or before November 6, 1986) fails or refuses to provide to the Employer additional proof of his/her immigration status.

## SECTION 40            UNION REGISTRY

The Union may start a registry and that registry will have first right of refusal for jobs here. The Union's registry will be made up of Union Members.

Should the Union establish a Registry for LVNs, CNAs, RNAs and other bargaining unit classifications, the Employer will give the Union Registry first opportunity to fill the Employers employee needs. Should the Union Registry be unable to fill the Employer's employee needs in a reasonable time, the Employer may then utilize an outside Registry.

Before any registry is utilized, the Employer must approach bargaining unit members to fill the vacant spot left from employee terminations, illness, vacation, or other such vacancy, in the following order:

1.   Regular Full-time employees by seniority

2.   Part-time employees

3.   On-call employees

4.   Temporary employees

5.   Volunteers among an affected classification

**SECTION 41**         **TERM OF AGREEMENT**

This Agreement shall be effective March 11, 2006 and shall remain in full force and effect through August 15, 2008, and from year to year thereafter, provided however, that either party may serve written notice on the other at least ninety (90) days prior to August 15, 2008, or any August 15 anniversary date of its desire to cancel or amend any provisions hereof.

In witness whereof, the duly authorized undersigned parties have hereunto fixed their signatures:

**Trinity Health Care, Inc.**                    **SEIU United Healthcare Workers - West**

_____  4-1-2007      _____  4/25/07
Randy Kelis, President        Date           Sal Rosselli, President        Date

                                             _____  3/23/07
                                             Yvonne Shaw                   Date
                                             Union Representative,
                                             Convalescent Division

                                             _____  4-25-07
                                             Mark McCrady                  Date
                                             Shop Steward, High Street


**Trinity Health Care, Inc.**          **SEIU United Healthcare**
**d.b.a. High Street and**             **Workers - West**
**MacArthur Care Centers**

                                       _____  4/18/07
                                       Barbara Stewart               Date
                                       Shop Steward, MacArthur

                                       _____  4/25/07
                                       Andres Quinteros              Date
                                       Show Steward, High Street


                                       _____  _____
                                       Mary K. Burnett               Date
                                       Shop Steward, High Street


YS:ca/2212_exp2008 Draft/OPEIU 29 AFL-CIO

22

**APPENDIX A          WAGES**

Effective March 11, 2006, all employees shall receive a One Dollar ($1.00) per hour wage increase across-the-board, retroactive to August 15, 2005. The $1.00 shall also be added to the Tenure/Classification Steps.

The following shall be the minimum straight-time hourly wage rate:

| CLASSIFICATION | START | 6 MOS. | 1 YR. | 2 YRS. | 3 YRS. |
|---|---|---|---|---|---|
| Certified Nurse          Assistant | $11.85 | $12.20 | $12.55 | $12.90 | $13.25 |
| Uncertified Nurse        Assistant | 10.35 | - | - | - | - |
| Physical Therapy        Assistant & Rehab. Nursing        Assistant | 11.90 | 12.25 | 12.60 | 12.95 | 13.30 |
| Licensed Vocational            Nurse | 19.65 | 20.15 | 20.65 | 21.15 | 21.65 |
| Ward Clerk | 11.65 | 12.00 | 12.35 | 12.70 | 13.05 |
| Staffing/Central Supply Coordinator | 14.65 | 15.15 | 15.65 | 16.15 | 16.65 |
| Cook | 11.15 | 11.50 | 11.85 | 12.15 | 12.40 |
| Relief Cook | 10.90 | 11.25 | 11.60 | 11.90 | 12.15 |
| Dietary Worker | 10.15 | 10.45 | 10.80 | 11.10 | 11.40 |
| Maintenance Worker | 10.15 | 10.45 | 10.80 | 11.10 | 11.40 |
| Housekeeper | 10.15 | 10.45 | 10.80 | 11.10 | 11.40 |
| Janitor | 10.15 | 10.45 | 10.80 | 11.10 | 11.40 |
| Laundry Worker | 10.15 | 10.45 | 10.80 | 11.10 | 11.40 |

All Employees shall receive $1.00 per hour wage increase, across the board, on August 15, 2006. The increase shall be added to the wage scale.

| CLASSIFICATION | START | 6 MOS. | 1 YR. | 2 YRS. | 3 YRS. |
|---|---|---|---|---|---|
| Certified Nurse          Assistant | $12.85 | $13.20 | $13.55 | $13.90 | $14.25 |
| Uncertified Nurse        Assistant | 11.35 | - | - | - | - |
| Physical Therapy         Assistant & Rehab. Nursing          Assistant | 12.90 | 13.25 | 13.60 | 13.95 | 14.30 |
| Licensed Vocational Nurse | 22.00 | 22.50 | 23.00 | 23.50 | 24.00 |
| Ward Clerk | 12.65 | 13.00 | 13.35 | 13.70 | 14.05 |
| Staffing/Central Supply Coordinator | 15.65 | 16.15 | 16.65 | 17.15 | 17.65 |
| Cook | 12.15 | 12.50 | 12.85 | 13.15 | 13.40 |
| Relief Cook | 11.90 | 12.25 | 12.60 | 12.90 | 13.15 |
| Dietary Worker | 11.15 | 11.45 | 11.80 | 12.10 | 12.40 |
| Maintenance Worker | 11.15 | 11.45 | 11.80 | 12.10 | 12.40 |
| Housekeeper | 11.15 | 11.45 | 11.80 | 12.10 | 12.40 |
| Janitor | 11.15 | 11.45 | 11.80 | 12.10 | 12.40 |
| Laundry Worker | 11.15 | 11.45 | 11.80 | 12.10 | 12.40 |

All Employees shall receive $1.00 per hour wage increase, across the board, on August 15, 2007. The increase shall be added to the wage scale.

| CLASSIFICATION | START | 6 MOS. | 1 YR. | 2 YRS. | 3 YRS. |
|---|---|---|---|---|---|
| Certified Nurse        Assistant | $13.85 | $14.20 | $14.55 | $14.90 | $15.25 |
| Uncertified Nurse        Assistant | 12.35 | - | - | - | - |
| Physical Therapy        Assistant & Rehab. Nursing        Assistant | 13.90 | 14.25 | 14.60 | 14.95 | 15.30 |
| Licensed Vocational Nurse | 23.00 | 23.50 | 24.00 | 24.50 | 25.00 |
| Ward Clerk | 13.65 | 14.00 | 14.35 | 14.70 | 15.05 |
| Staffing/Central Supply Coordinator | 16.65 | 17.15 | 17.65 | 18.15 | 18.65 |
| Cook | 13.15 | 13.50 | 13.85 | 14.15 | 14.40 |
| Relief Cook | 12.90 | 13.25 | 13.60 | 13.90 | 14.15 |
| Dietary Worker | 12.15 | 12.45 | 12.80 | 13.10 | 13.40 |
| Maintenance Worker | 12.15 | 12.45 | 12.80 | 13.10 | 13.40 |
| Housekeeper | 12.15 | 12.45 | 12.80 | 13.10 | 13.40 |
| Janitor | 12.15 | 12.45 | 12.80 | 13.10 | 13.40 |
| Laundry Worker | 12.15 | 12.45 | 12.80 | 13.10 | 13.40 |

# EXHIBIT C

MAR 1 3 2001

## RESTATED TRUST AGREEMENT AS OF JANUARY 1, 2000
## OF THE SERVICE EMPLOYEES INTERNATIONAL UNION
## NATIONAL INDUSTRY PENSION FUND

TRUST AGREEMENT made and entered this ____ day of July, 2000, by and between ANDREW L. STERN, CHARLES RIDGELL, MIKE GARCIA, SHARLEEN STEWART, ROD BASHIR of the SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO C.L.C., ("International") on behalf of the International Executive Board thereof and as Union Trustees and WILLIAM F. STUHLBARG, JOHN J. SHERIDAN, EDWARD J. MANKO, JESSE LINZER, LEE CRETAROLO as Employer Trustees (hereinafter collectively referred to as the "Trustees").

### WITNESSETH:

WHEREAS, at the 13th General Convention of the International a resolution was adopted concerning the establishment of a pension fund for the benefit of employees ("Employees") covered by collective bargaining agreements with certain locals of the International ("Locals") and employers who have executed or will execute collective bargaining agreements with the Locals or International and amendments thereto requiring periodic payments by such employers to such Pension Fund ("Employers"); and

WHEREAS, in order to effectuate the purposes of the 13th General Convention, this Trust Agreement ("Agreement") was entered into by the International and Employers and their respective trustees on May 20, 1968, which Agreement established a trust fund which is known as the Service Employees International Union National Industry Pension Fund (hereinafter referred to as the "Fund") which Fund has been used and is to be used in the manner hereinafter set forth in this Agreement; and

WHEREAS, the parties to this Agreement have amended same effective August 15, 1968, September 6, 1973, January 1, 1976, October 12, 1977, November 30, 1983, January 17, 1990, February 8, 1991 and January 14, 1992.

THEREFORE, the Trustees now enter into this Agreement for the purposes of further amending this Agreement and consolidating into a single document all of the provisions of the Agreement and all of its amendments thereto; the parties agree as follows:

### ARTICLE I

1.1    The Trustees shall continue to administer, one or more pension plans ("Plan") on behalf of the said Employees and shall hold in trust all assets which shall be used for the exclusive purpose of providing benefits to Employees and their beneficiaries ("Participants") as decided by the Trustees.



EXHIBIT
PLAINTIFF'S
2

and shall further provide the means for defraying reasonable expenses of administering and operating the Plan in accordance with this Agreement.

1.2    The Fund shall comprise the entire assets derived from employer contributions made to or for the account of this Fund under agreements requiring contributions to the Fund together with any and all investments made and held by the Trustees, or monies received by the Trustees as contributions or as income from investments made and held by the Trustees or otherwise, and any other money or property, received and/or held by the Trustees for the uses, purposes and trust set forth in this Agreement.

1.3    The terms used herein which are also used in the Plan shall have the respective meanings ascribed thereto by the provisions of the Plan.

1.4    The said Plan is hereby made a part of this Agreement.

## ARTICLE II

2.1    The terms and provisions of both this Agreement and the Plan shall be binding upon the Trustees, Employers, Participating Local Unions and Plan Participants as set forth in this Agreement and in the Plan.

## ARTICLE III

3.1    An Employer shall mean one who is accepted by the Trustees for participation in the Fund and may include employers who have collective bargaining agreements with the International or with local unions affiliated with the International, as well as local unions and other organizations affiliated with the International and trust funds sponsored by the International or organizations affiliated with the International. Each Employer shall contribute to the Fund the required contributions and shall make such reports to the Fund as may be required by the Trustees.

3.2    The Trustees shall have the power to assess against Employers whose contributions are received by the Fund after the date when such contributions were due, an amount in addition to such contributions, as liquidated damages (which said charge shall not be deemed to be a penalty) as the Trustees deem appropriate, provided, however, that any such charge shall be assessed in a uniform and non-discriminatory manner.

## ARTICLE IV

4.1    The Trustees shall pay out of the Fund the benefits provided for in the Plan.

## ARTICLE V

5.1    In the administration of the Trust, the Trustees are authorized and empowered in their

sole and absolute discretion:

5.1 (1) To invest and reinvest the Fund, and to keep same invested in such property, real or personal, tangible and intangible, as they shall determine, whether or not such investments and reinvestments are then authorized to be made by fiduciaries under applicable law, including but not limited to, bonds, stocks (including stocks of or interests in mutual funds or so-called "investment trusts"), securities, choses-in-action, debentures, notes or other evidence of indebtedness, mortgages on real or personal property, wherever situated (including any part interest in a bond or mortgage whether insured or uninsured).

5.1 (2) To sell, at public or private sale, and for such prices and upon such terms as they shall determine, any or all property, real or personal, tangible or intangible, at any time held by them.

5.1 (3) To permit to remain uninvested, and/or to deposit in savings and/or other banks, for such periods as they shall determine, any monies at any time received or held by them.

5.1 (4) To join in and to dissent from and/or to oppose any agreement, merger, consolidation, reorganization, liquidation, sale or exchange affecting any corporation or properties in which they may be interested as Trustees, as to accept and hold any property which may be received as a result thereof.

5.1 (5) To deposit any securities and/or other properties with any protective, reorganization or other committee, and to pay a share of the expenses and compensation of any such committee, and to pay any assessments levied with respect to any securities or other properties so deposited.

5.1 (6) To exercise any conversion privileges and/or subscription rights available in connection with the whole or any part of the Fund.

5.1 (7) To vote in person or by proxy on all stocks and other securities at any time held by them, and to delegate discretionary power to any proxies designated by them for such voting.

5.1 (8) To compromise, settle and/or arbitrate any claim of or against the Trust, and to reduce the rate of interest on, to extend or otherwise modify and/or foreclose upon default or otherwise enforce any obligation to the Trust.

5.1 (9) To abstain from enforcing any claim at any time held by them.

5.1 (10) At any time and from time to time, to mortgage, pledge, hypothecate, exchange, partition, and otherwise dispose of any or all property, real or personal, tangible or intangible any time held by them and to lease the same for such terms as they shall determine

-3-

5.1 (11) To borrow money from any persons, firms, corporations or institutions, upon such terms and conditions as the Trustees shall determine, and for the sums so borrowed, the Trustees may issue their promissory notes or other evidence of indebtedness.

5.1 (12) To register any securities or other property with or without the addition of words indicating that such securities or other property are held in a fiduciary capacity; and to hold in bearer form any securities or other property so that title thereto will pass by delivery, but the books and records of the Trustees shall show that all such investments are part of the Fund.

5.1 (13) To purchase, acquire, receive, retain, administer, surrender or assign any life insurance or annuity contract and pay the premium and exercise the rights, privileges, options and benefits contained therein.

5.1 (14) To examine the payroll and other pertinent records of any Employer whenever such examination is deemed necessary or advisable by them in connection with the proper administration of the Plan.

5.1 (15) To enter into agreements, contracts, and other instruments for the deposit of funds with banks or trust companies and to authorize such depositaries to act as custodians of the funds, whether in case of securities or other property, and to authorize such depositaries to convert, invest and reinvest the funds, entirely or in part, in securities of any kind and nature whatsoever provided that such depositaries obtain such approval, if any, of the Trustees for each such transaction as may be specified by the Trustees in such agreement, contract or other instrument or in a supplement thereto.

5.1 (16) To designate other persons to carry out their fiduciary responsibilities, or any part thereof, to the full extent permitted by the Employee Retirement Income Security Act of 1974, as the same may be amended from time to time.

5.1 (17) To allocate all or any part of their fiduciary responsibilities for the operation and administration of the Trust and the Plan among any of the named fiduciaries as that term is defined in the Employee Retirement Income Security Act of 1974, as the same may be amended from time to time.

5.1 (18) To retain such accountants, attorneys, actuaries, investment counsel and consultants (who may be accountants, attorneys, actuaries, investment counsel, and consultants to any or all of the Employers, Locals or the International) as they may select. To the extent permitted by applicable law, the opinion of any accountant, attorney, investment counsel or consultant retained or employed by the Trustee shall be full and complete authority and protection in respect of any action taken, suffered or omitted by the Trustees in good faith and in accordance with such opinion.

-4-

5.1 (19) To employ such persons as they shall deem necessary to effectuate the purposes of the Plan and Trust and compensate them in such matter as the Trustees deem appropriate and to provide benefit programs for such persons.

5.1 (20) To designate, by a written instrument signed by all of them, each or any of them, severally, or any two or more of them, jointly, and/or any one of more other persons severally or jointly, to execute on behalf of all of them documents and other instruments (including but not limited to directions, authorizations and checks) proper, necessary or advisable in order to effectuate the purposes of the Plan, and by a written instrument executed by any six of them, revoke any such designation theretofore made.

5.1 (21) To appoint an Investment Manager or Managers, as that term is defined in the Employee Retirement Income Security Act of 1974, together with any future amendment thereto, to manage (which shall include the power to acquire and dispose of Trust Assets) any assets of the Trust and to delegate to such Investment Manager or Managers all or any part of the investment powers vested in the Trustees by this Trust Agreement, and any Investment Manager so appointed shall acknowledge in writing to the Trustees that he is a fiduciary with respect to the Plan.  If any Investment Manager or Managers have been appointed in accordance herewith, then no Trustees shall be liable for the acts or omissions of such Investment Manager or Managers, or be under an obligation to invest or otherwise manage any assets of the Plan which is subject to the management of such Investment Manager.

5.1 (22) Except as otherwise provided herein, to establish such procedures, rules and regulations, not inconsistent with the provisions of this Agreement and the Plan, as shall be necessary to carry out the operation of the Plan and effectuate the purpose thereof.

5.1 (23) To enter into agreements with Trustees of other Pension Plans, providing for merger or joinder or for the exchange of pension credits.

5.1 (24) To purchase insurance to protect the Fund and the Fund's fiduciaries, including themselves collectively and/or individually, against any loss occurring by reason of the act or omission of a fiduciary; provided, however, that such insurance shall be in the form and manner permitted by law.

5.1 (25) If the Trustees determine that it furthers the interests of the Participants of the Trust, to cause the Trust to join or to join on their own behalf, at the expense of the Trust, such educational organizations as they deem appropriate and may attend educational seminars and similar programs of such organizations. The Trustees may be reimbursed by the Trust for all reasonable expenses actually incurred by them in connection with attendance at such seminars and programs.

-5-

5.1 (26) To provide for the administration of the Fund, the Trustees in their discretion may appoint a custodian of all or part of the assets of the Fund a bank or trust company organized and doing business under the laws of the United States or of any State, authorized under such laws to exercise trust powers, subject to supervision or examination by Federal or State authority, ("Custodian").

5.1 (27) To transfer to the custody of the Custodian all, or such part as they deem desirable, of the assets of the Fund, and may enter into an agreement(s) with Investment Manager(s), which shall be in such form and contain such provisions as the Trustees may deem appropriate and consistent with the provisions of the Employee Retirement Income Security Act of 1974.

5.1 (28) The foregoing shall be supplemental and not exclusive, and the Trustees shall have all of the general powers of fiduciaries, and in addition, said special powers and all other powers reasonably to be implied therefrom or necessary for the proper exercise thereof. None of such powers shall be construed to limit in any manner any other thereof.

5.1 (29) To do all acts, whether or not expressly authorized in this Restated and Amended Trust Agreement, which the Trustees deem necessary to accomplish the general objectives of the Trust.

5.1 (30) To commingle assets for investment purposes with other qualified plans or funds sponsored by the International.

5.2    The Trustees' or, where Trustee responsibility has been delegated to others, such other persons, shall subject to the requirements of law, be the sole judges of any determination of fact, the standard of proof required in any matter and the application and interpretation of this Agreement and the Plan, and decisions of the Trustees or their deputies shall be final and binding upon all persons dealing with the Trust or claiming any benefit hereunder, except to the extent that such decision is determined by a court or arbitrator having jurisdiction over such matter to be arbitrary or capricious or an abuse of discretion.

## ARTICLE VI

6.1    Any Trustee may resign upon giving thirty days' notice in writing to the remaining Trustees, or such shorter notice as the remaining Trustees may accept as sufficient, in which notice there shall be stated a date when such resignation shall take effect. Such resignation shall take effect on the date specified in such notice unless a successor Trustee shall have been appointed at an earlier date, in which event such resignation shall take effect immediately upon the appointment of such successor Trustee.

6.1(1) The Trust and the United States Plan or Plans shall be administered by not less than four (4) Trustees. The Canadian Plan or Plans shall be administered solely by one of the Union Trustees who shall be a resident of Canada, and by one of the Employer Trustees. The Union Trustees shall be ANDREW L. STERN, CHARLIE RIDGELL, MIKE GARCIA, SHARLEEN STEWART, ROD BASHIR, and their successors designated as hereinafter provided. The Employer Trustees shall be WILLIAM F. STUHLBARG, JOHN J. SHERIDAN, EDWARD J. MANKO, JESSE LINZER, LEE CRETAROLO, and their successors designated as hereinafter provided. The Union Trustee of the Canadian Plan or Plans shall be SHARLEEN STEWART and the Employer Trustee of the Canadian Plan or Plans shall be WILLIAM F. STUHLBARG.

6.1(2) In the event there shall be a vacancy in the position of Union Trustee, the successor shall be designated by the International Executive Board. In the event the Fund includes Canadian Employers and Participants one of the Union Trustees shall be a Canadian resident.

6.1(3) In the event that there shall be a vacancy in the position of Employer Trustee, held by LEE CRETAROLO the successor and his Deputy Trustee shall be designated by American Building Maintenance Industries Incorporated, (herein referred to as "ABM") if ABM is an Employer at the time such vacancy occurs. All other Successor Employer Trustees shall be designated by a majority of the then remaining Employer Trustees. In the event of other Employer Trustees vacancies, the remaining Employer Trustees shall designate a Successor Trustee. All Employers who contributed to the Fund in the preceding calendar month shall be notified by first class mail of the identity of the Successor Employer Trustee designated in accordance with the Agreement. If, within 20 days of the mailing of such notice, there is no such objection to such designation from a majority of Employers such Successor Employer Trustee shall be the Employer Trustee with full power and authority to act under this Agreement. In the event that objection from a majority of Employers are received, or in the event that no such Successor Employer Trustee is designated within 180 days after a vacancy exists, or in the event that there is no other Employer Trustee to make the designation in accordance with the foregoing, then all Employers shall be notified in writing of the existence of such vacancy and given an opportunity to nominate a Successor Trustee. Each Employer shall have twenty calendar days after the date of mailing of notice to Employer of the vacancy to designate and notify the Trustees of its nominee. A ballot shall be prepared listing the names of all such nominees which are received by the Fund Administrative Director within twenty (20) calendar days after the mailing of such notice and such ballot shall be distributed to all such Employers. Each such Employer shall have the number of votes equal to the number of Employees for whom that Employer contributed to the Fund in the month immediately preceding the month in which the ballot is mailed to the Employer. The nominee receiving the largest number of votes cast in the date such ballots were mailed by the Fund shall be deemed to be elected Successor Employer Trustee.

6.1(4) Any Union Trustee may be removed at any time by the filing with the remaining Trustees of a writing signed by the President and Secretary/Treasurer of the International certifying

-7-

the removal of such Trustee by resolution of the International Executive Board, and such removal shall become effective immediately upon such filing. Any Employer Trustee may be removed at any time by a majority of votes of the remaining Employer Trustees or by a writing or writings signed by such Employers employing a majority of Employees employed by all Employers, provided, however, that LEE CRETAROLO, and his successors may be removed only by ABM as long as it continues to be an Employer.

6.1 (5) In the case of a vacancy in the office of Union Trustee, or Employer Trustee, the successor shall be designated as herein provided. Upon the filing with the remaining Trustees of a writing signed by the President and/or Secretary/Treasurer of the International, or by action of the remaining Employer Trustees, other Employers or ABM whichever shall be applicable, the designation of such successor Trustee shall become effective immediately upon filing with the remaining Trustees his/her written acceptance of the Trust.

6.2 (1) Each Employer Trustee and each Union Trustee shall be entitled to one vote.

6.2 (2) If at any time there shall be an unequal number of Employer Trustees and Union Trustees serving on the Board of Trustees, the votes of the Trustees on the side having the fewer Trustees shall be increased proportionately so that the total number of votes on each side shall be equal.

6.3    Whether and to what extent any bond or other security shall be required for the faithful performance of the Trustees or any of them or any employee of the Fund, shall be determined by the Trustees, subject to applicable law.

6.4    Each Trustee may designated in writing any other person to act as his/her Deputy. Any such Deputy Trustee shall be bonded to the same extent as the Trustees and shall be clothed with all of the same powers as the Trustee designating the Deputy Trustee. Any action of such Deputy Trustee shall be of the same force and effect as if done by the Trustee. The Deputy Trustee may act only if the designating Trustee is absent.

6.5    With respect to matters concerning changes in any benefit formula, no action shall be taken at any meeting of the Trustees unless all Trustees or a Deputy Trustee shall be present and vote in favor of such action, or, if not present, vote by proxy in favor of such action.

6.6    With respect to all other matters, no action shall be taken at any meeting of the Trustees unless there shall be at least one Trustee present from each side and a majority of Trustees present vote in favor of such action. In instances where there are deputy trustees who are authorized to act for a Trustee, then there must be at least one Union and one Employer Trustee, present and voting. If at any time there shall be an unequal number of Employer Trustees and Union Trustees, or their Deputy Trustees voting, then the votes of the Trustees on the side having the fewer trustees shall be increased proportionately so that the number of votes on each side shall be equal.

6.7.    Action may be taken by the Trustees without a meeting on any matter by their unanimous written concurrence.

6.8.    The Trustees may, by resolution, adopt such procedures as they deem appropriate for the purpose of approving or adopting decisions relating to investment of trust assets.

6.9.    If the Trustees shall deadlock upon any action involving the administration of the Plan or Fund, or interpretations of the Trust Agreement, the disposition of such action shall, upon the demand of any Trustee, be submitted to arbitration in accordance with applicable rules of the American Arbitration Association, and the decision of such arbitrator shall be final and binding.  The arbitrator shall be without power or authority to amend, modify or vary any provision of the Plan or this Agreement.

## ARTICLE VII

7.1    Any controversy or claim made arising out of or relating to a claim for benefits payable by this Plan shall be settled by arbitration in accordance with the Employee Benefit Plan Claims Arbitration Rules of the American Arbitration Association incorporated by reference herein.  The decision of the Arbitrator shall be final and binding and judgment upon the award may be entered in any court having jurisdiction thereof.

## ARTICLE VIII

8.1    Either or both of the Plan and the Trust may be terminated at any time by vote of all Trustees and with such effective date as the Trustees may determine.  In the event of such termination, to the extent that the assets then remaining in the Fund shall be sufficient and after providing for any administrative expenses, such assets shall be allocated for the purpose of paying benefits (based on Service Credits accumulated prior to the date of such termination) in accordance with the provisions of the Plan.

8.2    In no event shall such termination result in the return or diversion of any part of the Fund to the International or Local, or any Employer.

8.3    Contributions paid to the Fund as a result of a mistake of fact may be returned by the Trustees to such Employer to the extent and within the time permitted by applicable law.

## ARTICLE IX

9.1    To the extent permitted by applicable law, no Trustee shall be liable for any action taken or omitted to be taken by him in good faith, nor for the wrongful acts of any agent, employee,

fiduciary, co-fiduciary or attorney selected by the Trustees, nor for any act or omission of any other Trustee. The fact that such action or omission was advised by counsel employed by the Trustees shall be conclusive evidence of the good faith of such act.

## ARTICLE X

10.1    The Plan has been submitted to the Internal Revenue Service and has been determined to be qualified Plan pursuant to the requirements of the Internal Revenue Code. The Trustees hereby agree to amend the Plan in the future as may be necessary to continue its IRS qualification.

## ARTICLE XI

11.1    The Trustees shall establish and maintain its principal office in Washington D.C., and may maintain offices at other locations of the United States and Canada to service the Employers

## ARTICLE XII

12.1    Any notice given hereunder to any of the Trustees, Locals, Employers, or the International, shall be sufficient if given in writing and delivered to or sent by first class mail, fax or electronic-mail to the addressee at the address on file at the Fund office.

## ARTICLE XIII

13.1    Except to the extent that Federal Law requires a different construction, the respective terms and provisions hereof and of the Plan shall be construed in accordance with the laws of the District of Columbia.

## ARTICLE XIV

14.1    The Trustees hereby accept the Trust and agree to execute the same in accordance with the provisions hereof and of the Plan.

## ARTICLE XV

15.1    This Agreement may be executed in one or more counterparts, and the signature of a party or any counterpart shall be sufficient evidence of his execution thereof.

## ARTICLE XVI

16.1    Any Employer entering into a Standard Participating Agreement or other Participation

Agreement approved by the Trustees shall be bound by the provisions of this Agreement and of the Plan.

## ARTICLE XVII

17.1   This Trust Agreement may be amended by a majority of the Trustees' votes being cast in favor of any amendment provided, however, that no such amendment shall cause any part of the Fund to be used for or diverted to any other purpose other than the purposes of the Fund provided for in this Agreement.

## ARTICLE XVIII

18.1   The Trustees designated hereunder, and their successors shall be "Named Fiduciaries": as the same are defined in the Employee Retirement Income Security Act of 1974.

IN WITNESS WHEREOF, the undersigned, being all of the Trustees of said Trust Fund, have caused this instrument to be executed on the date appearing opposite their respective names.

Date: 9-28-00

ANDREW L. STERN

Date: 9/28/00

CHARLIE RIDGELL

Date: 9-28-00

MIKE GARCIA

Date: 9-28-00

SHARLEEN STEWART

Date: 9/28/00

ROD BASHIR

Date: 9/28/00

WILLIAM F. STUHLBARG

Date: 9-28-00

JOHN J. SHERIDAN

Date: 9-28-00

EDWARD J. MANKO

Date: 9/28/00

JESSE LINZER

Date: 9-28-00

LEE CRETAROLO

-11-

# EXHIBIT D

**SEIU NATIONAL INDUSTRY PENSION FUND**
**STATEMENT OF POLICY FOR COLLECTION OF DELINQUENT CONTRIBUTIONS**
(Revised January 18, 2007)

The Board of Trustees of the Service Employees International Union National Industry Pension Fund ("Fund") hereby adopts the following policy for the collection of delinquent contributions.

## SECTION 1
### General Policy

It is the policy of the Fund to make such diligent and systematic efforts as are appropriate under the circumstances to collect all Employer contributions when they are due.

The Trustees have the legal right to exercise all remedies allowable under the Trust Agreement and under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), including but not limited to:

1. The right to establish a date on which contributions are due and the format in which remittance reports supporting such contributions must be made, provided that such date and format requirements are not inconsistent with the terms of the collective bargaining agreement;

2. The right to conduct a review of the payroll records of all employees of the Employers required to contribute to the Fund including, but not limited to, payroll ledgers, federal and state tax returns, IRS Form 941 and such other books and records of the Employers that are necessary in order for the auditor to give an unqualified opinion that the proper contributions have been made;

3. The right to establish an audit or payroll review program;

4. The right to require that a participating Employer pay the cost of a payroll review, plus interest, liquidated damages, attorneys' fees, and any other expenses incurred by the Fund in conducting the payroll review;

5. The right to recover interest, liquidated damages, attorneys' fees and any other expenses incurred by the Fund in collecting any delinquency;

6. The right to require a bond or a cash deposit as security for prompt future payments due from an Employer that has been habitually delinquent in its contributions to the Fund;

7. The right to enforce this Policy against any Employer that ceases to have an obligation to contribute to the Fund with regard to the time period during which the Employer was obligated to contribute to the Fund;

8. The right to terminate a delinquent Employer's participation in the Fund in appropriate circumstances, as determined by the Trustees in their sole discretion; and

9.  The right to take all other steps and to perform all other acts that are necessary in order to collect contributions due to the Fund in a timely and expeditious manner.

The procedures set forth herein shall be followed unless the Board of Trustees determines that they should be waived in a particular instance.

All questions or disputes relating to the interpretation, meaning and/or application of this policy shall be finally and exclusively resolved by the Board of Trustees in the exercise of its discretion and in the performance of its fiduciary obligations to the Fund's participants and beneficiaries, in the protection of the financial integrity and soundness of the Fund and the efficient and effective administration of the Fund.

### SECTION 2
### Collection Procedure

In accordance with the Trust Agreement, ERISA, and the above declaration policy, the following procedures shall be required of all contributing Employers and the steps set out below shall be taken to effectuate the collection of delinquent contributions.

1.  Contributions and supporting remittance reports(s) are due by the 15th day of the month following the month in which the work was performed for which the contributions are owed. Initial contributions and supporting remittance reports for Employers who are newly subject to collective bargaining agreements (*i.e.* for all months necessary to bring the employee group current) are due no later than the 15th day of the month following the month in which the collective bargaining agreement was executed by the bargaining parties. Retroactive contributions made on behalf of employees shall be considered timely made if paid by the 15th of the month following the month in which the employee becomes eligible for those contributions.

2.  Contributions shall not be regarded as having been timely made unless accompanied by a completed remittance report form (or forms) supplied by the Fund supporting such contributions. The Executive Director may approve the submission of reports in other forms, including on magnetic media, if he determines that providing reports in such form will not cause additional burden or expense to the Fund.

3.  If the contributions and the remittance report are not received by the last day of the month in which they were due, the Fund Office shall send a notice of delinquency to the Employer requesting immediate payment of the delinquent contributions plus interest thereon at the rate prescribed by Section 5 of this policy. The notice will demand immediate payment of all delinquent contributions and submission of supporting remittance report(s). The notice will inform the delinquent Employer that, unless the full amount due is received, the matter will be referred to the Fund's legal counsel for collection.

4.  If contributions and supporting remittance report(s) in a form acceptable to the Fund are not received by the end of the month in which they are due, the Employer shall, in addition to the underlying delinquent contributions owed, be obligated to pay to the Fund interest at the rate prescribed by Section 5 of this Policy. If contributions and supporting remittance report(s) are not received by the

2

15th day of the month following the month in which contributions are due, liquidated damages in the amount of 5% of the amount owed, with a minimum of $50 and a maximum of $800 for each month's delinquency, shall also be due from the Employer. Notwithstanding the foregoing, interest calculated to be less than one dollar ($1.00) shall not be charged.

5. If the contributions and remittance report(s) are not received by the fifteenth day of the month following that in which contributions were due, the delinquency shall be referred to legal counsel, with copies of notices sent to the Employer. The Fund Office also shall refer to counsel the cases of Employers who have accrued balances of unpaid interest or liquidated damages that equal or exceed $1,000.

6. If the Fund Office has not received the proper remittance reports to determine the amounts owed by the Employer, the Fund Office shall estimate the contributions due based on the most recent contributions remitted to the Fund and the Employer shall be deemed delinquent in its contributions in that amount, as a minimum, in any subsequent legal action.

7. If an Employer makes payment of the amount of the delinquency but not payment of accrued interest and other amounts owed, acceptance of the payment shall not constitute a waiver of the Fund's claim for such accrued interest or other amounts.

8. Any unpaid interest or liquidated damages shall be billed to the Employer on the monthly delinquency letters or pre-printed remittance forms generated each month. The Executive Director may suspend collection procedures for liquidated damages and interest when extenuating circumstances are present. However, the Executive Director shall prepare a report to the Trustees of all such actions for their consideration at their next scheduled meeting. The Trustees may, at that time, waive such charges or direct that collection proceedings be reinstated.

9. If an Employer believes it has overpaid contributions, the Employer shall bring the matter to the attention of the Board of Trustees, in writing. If the Trustees determine that the Employer overpaid its contributions for a period of not more than three (3) months, and that such overpayment was due to mistakes of law or fact, the Trustees shall, not later than six (6) months after they determine the contributions were made pursuant to such mistake, give the Employer a credit for the amount of such overpayment. If the Employer is not a participating Employer at the time the request is made, a refund may be made to the Employer. The Trustees hereby delegate to the Executive Director the authority to make the foregoing determination on their behalf. The Executive Director shall refer to the Trustees or the Delinquency Committee described in Section 3, Paragraph 9, any requests for credit or refund for overpayment occurring during a period of more than three (3) month's duration. The Trustees or the Delinquency Committee may, in their sole discretion, authorize credits or refunds for overpayments for periods of time longer than three (3) months, but such credits or refunds for overpayments shall be issued only in a manner consistent with ERISA section 403 (c)(2) and Internal Revenue Code section 401(a)(2). No interest shall be due to any Employer on any overpayment.

10. The Fund Office shall promptly notify legal counsel of receipt of any payment and/or remittance reports from any Employer that has previously been referred to counsel.

11. Legal counsel shall follow the procedures set out in Section 3 of these Rules.

3

## SECTION 3
### Legal Action and Settlement

1. When a delinquency matter is turned over to the Fund's legal counsel for collection, legal counsel shall send a letter to the Employer demanding the required remittance report with payment of the delinquent contributions and advising the Employer of its liability for interest, liquidated damages, and costs.

2. In the event an Employer fails to pay the delinquent contributions and submit the remittance report(s) within twenty (20) days after legal counsel's demand for payment, legal counsel shall initiate legal action for any delinquency in excess of $1,000.00, unless legal counsel recommends a different course of action based upon pertinent factors which shall include, but are not limited to the following:

   a. The financial condition of the Employer,
   b. The probability of collecting a judgment once it is obtained,
   c. The Employer's past performance as a contributing Employer,
   d. The amount of the delinquency,
   e. The length of time the delinquent amount has been owed,
   f. The likelihood that the costs of the suit will exceed the recovery, and
   g. Any other factor that, in the judgment of the legal counsel, may have a material bearing on the collection of the delinquent contributions.

3. Legal counsel is authorized to enter into settlement negotiations with delinquent Employers. Without further approval of the Board of Trustees, legal counsel is authorized to settle claims against delinquent Employers in instances where the delinquent Employer promises immediate payment of the delinquent contributions owed, interest thereon, attorney's fees and costs. Any proposed settlement that waives or compromises those amounts must be approved by the Board of Trustees. It shall be the responsibility of legal counsel to advise the Fund, whether, and when, to reinstate any previously waived charges.

4. Legal counsel has the authority to accept any proposal for settlement that contemplates payment of all amounts (including interest and late fees or liquidated damages) due over a reasonable period of time, not to exceed six (6) months. Legal counsel has the authority to reject any proposal for settlement that contemplates payment of amounts due over a period of time or if its acceptance would result in collection of less than the total amount owed. Such rejection shall be subject to the Board of Trustees' subsequent review.

5. At the discretion of the Trustees, settlements may take many forms. Among those forms of settlement specifically authorized is the suspension of liability for interest, liquidated damages, or attorney's fees until a subsequent delinquency by the same Employer, if the collection of such amounts would involve unwarranted expense or risk to the Fund. Such a written settlement providing for nonpayment of interest, late payment penalty, liquidated damages, costs or attorneys' fees may contain a reservation to the Trustees of the right to collect such amounts in the event the

Employer again becomes delinquent in paying contributions during a period not to exceed three (3) years after the settlement is consummated.

6. The Board of Trustees reserves the right to accept or reject an Employer's proposal to pay delinquent contributions, interest, liquidated damages, and attorneys' fees over a period of time and to compromise any claim or delinquent account as recommended by legal counsel; provided however, that any such decision to extend the time for payment, or to compromise the amount owing, complies with Prohibited Transaction Exemption 76-1 promulgated by the United States Department of Labor.

7. Settlements calling for payments over time or compromising the amount owed, including interest, liquidated damages, attorneys' fees, or costs, must be in writing and signed on behalf of the Fund and the Employer.

8. Notwithstanding the procedures set out in this policy, the Board of Trustees or Executive Director may refer any delinquent account to legal counsel at an earlier or later date than provided for herein where circumstances warrant that the collection action be expedited or delayed.

9. The Trustees may, from time to time, appoint a Committee of at least one (1) Employer and one (1) Union Trustee to act on behalf of the Board of Trustees, as provided for under this policy.


## SECTION 4
## Payroll Review Procedure

1. The Board of Trustees shall randomly select such number of participating Employers each year for payroll reviews as it deems for time to time to be appropriate. The Board of Trustees may, at its discretion, delegate the task of selecting which Employers shall be reviewed pursuant to this policy to the Executive Director. The Board of Trustees, in the exercise of their discretion, may also choose for a payroll review an Employer who was not randomly selected.

2. The Executive Director may coordinate audit/payroll review activities with those of any other employee benefit plan(s) covering the same employees of the selected Employer. In each case of a joint audit/review, the Fund Office shall enter into an agreement (or agreements) with the other Plan(s) for an equitable allocation of the costs of such audit/review. The Executive Director is authorized to enter into any cost sharing agreement with respect to preliminary payroll reviews (in which testing for discrepancies is involved) in which costs are shared equally. The Executive Director is authorized to enter into any cost sharing agreement with respect to detailed payroll reviews (in which data on a per participant basis is generated) pro-rata in the same proportions as the discovered delinquencies of, or underpayments to, the respective Plans bear to one another. Cost sharing agreements on any other basis must be approved by the Trustees or Committee appointed under Section 3, paragraph 9.

3. The period covered by the payroll review shall be not less than one (1) year.

5

4. The right of the Fund to conduct a review of an Employer's records shall survive the termination of an Employer's collective bargaining agreement, any other written agreement under which the Employer is contributing to the Fund, or any bankruptcy filing.

5. The Fund Office shall forward a letter to the Employer advising it of the impending review and citing the Trustee's authority to conduct the review.

6. The auditor shall schedule the payroll review with the Employer, who shall make available to the auditor all books and records which the auditor determines are required. Employers with fewer than thirty-five (35) bargaining unit employees shall be required to send the pertinent records to the Fund Office or make the records available to the auditor for inspection at a location in the Washington, D.C. metropolitan area.

7. Where a payroll review of an Employer is conducted and the payroll review discloses an underpayment, the Fund Office shall send a letter to the Employer advising of the underpayment and requesting that the Employer make payment of the underpayment, liquidated damages, interest, testing fees (when appropriate under this policy) and attorneys' fees within thirty (30) days of the date of its receipt of the letter. After the expiration of the thirty (30) day period, a second letter shall be sent to the Employer demanding that the underpayment be remitted immediately. If payment is not received within ten (10) days of the date of such letter, the Fund Office will turn the matter over to legal counsel who will then send a third letter. If payment is not received following the third request, legal counsel shall file suit against the Employer.

8. In the event an Employer refuses to permit a payroll review upon request by the Trustees or if the Employer refuses the Fund auditor access to pertinent records, the Fund auditor shall refer the matter to legal counsel.

9. Legal counsel shall thereafter demand that the Employer make available such books and records as are necessary for the Fund auditor to conduct the payroll review. If, within a reasonable period of time not to exceed 60 days, the records are not forwarded to the auditor or made available at a Washington, D.C. Metropolitan area location or at such other location as the Trustees may agree to, the Employer shall be liable for any attorneys' fees and costs incurred by the Fund in enforcing the Fund's right to review the Employer's records. If necessary, upon approval of the Trustees or Executive Director, counsel shall institute legal action to enforce the Trustees' right to conduct a payroll review and the Employer shall be assessed all costs and attorney's fees incurred as a result of the Employer's refusal to permit the payroll review or refusal to make available all pertinent records. Contributing Employers have a duty to maintain a record of individual hours worked by its employees for at least six years. If an Employer violates this rule of the Fund, the Employer shall have a duty to sign necessary authorizations for any state or federal agency to release tax or other records showing payroll records and expense. If an Employer violates the duty to maintain required records, the burden will be on the Employer to show that any portion of the payroll expense was not for work requiring contributions to this Fund.

10. Employers will be billed for net amounts owed in excess of $50.00. Billings will be calculated as follows.

    (a)    Principal: This will be the total of the amount owed for all months showing a net underpayment during the audit period. Each monthly amount due will be net of overpayment.

PLUS

    (b)    Interest: Calculated monthly at 10% per annum. Interest will be calculated for net amounts owed each month and not for months with a net overpayment.

PLUS

    (c)    Liquidated Damages: Calculated at 5% of the total net principal amount, or, if greater, $50.

PLUS

Testing Fee:    The testing fee will include the auditor's time and expenses in performing the payroll review. The cost of the payroll review, in addition to any other applicable fees and costs, shall be payable by the Employer whenever a review of an Employer's record discloses principal due equal to or greater than:

    (i)    in the case of an Employer that contributed (or should have contributed) $50,000 or more in any contract year, 5% of the Employer's total required contributions for such period,

or

    (ii)    in the case of an Employer that contributed (or should have contributed) $10,000 or more but less than $50,000 in any contract year, the lesser of

        (A)    7% of the Employer's total required contributions for such period;

or

        (B)    $2,500

or

    (iii)    in the case of an Employer that annually contributed (or should have contributed) less than $10,000, the lesser of

        (A)    10% of the Employer's total required contributions for such period;

or

or

7

(B)    $1,000.

The testing fee will be charged for the entire audit period whenever one of the above thresholds is met in any of the calendar years tested.

11. The Board of Trustees shall authorize the Executive Director to make decisions regarding the collection of audit billings following the advice of legal counsel. In such cases where legal counsel has advised that the cost of further collection efforts for unsubstantial amounts would not be financially prudent to pursue, the Executive Director may then instruct that no further collection efforts are to be made.

12. The Board of Trustees authorize the Executive Director to issue a refund or credit to any Employer that notifies the Fund during an audit that the Employer overpaid contributions. The written refund request must be presented within two years of the date of the overpayment and the Trustees authorize the Executive Director to deny refunds and credits where appropriate. If an overpayment is discovered by the Fund during an audit, the Executive Director is authorized to issue a refund or credit for such overpayments made during the entire audit period.

## SECTION 5
### Interest, Liquidated Damages, Attorneys' Fees and Costs

1.    Interest owed by a delinquent Employer shall be calculated from the due date for the delinquent contributions through and including the date payment is actually received by the Fund Office at the rate of ten percent (10%) per annum.

2.    In the event a lawsuit or other legal action is filed pursuant to Section 3, and notwithstanding the provisions of Section 2, paragraph 4 and Section 4, paragraph 12(c), liquidated damages shall be calculated from the due date, and shall become due and owing if a lawsuit is filed pursuant to Section 3. The amount of the liquidated damages shall be greater of:

(a)    The interest on the delinquent contributions determined in accordance with paragraph 1 above;

Or

(b)    20% of the delinquent contributions.

3.    Attorneys' fees shall be assessed against a delinquent Employer, at a reasonable hourly rate (which rate shall be no less than the hourly rate charged to the Fund for such services) for all time spent by legal counsel in collection efforts pursuant to this policy or in enforcing the Board of Trustees' rights to payroll reviews pursuant to Section 4 hereof.

8

4.      All costs actually incurred in court actions for collection of delinquent contributions or to enforce the Trustees' right to conduct a payroll review of the Employer's records shall be assessed against the delinquent Employer, including, but not limited to, filing fees, fees for service of process, copying charges, postage, and such other costs as would otherwise be charged to the Fund.

5.      The obligations to pay interest, liquidated damages and fees chargeable under this policy are contractual in nature and independent of the provisions of ERISA Section 502(g). In consideration for permitting its participation, or continued participation, in the Fund, each contributing Employer agrees to be obligated to pay all interest, liquidated damages, fees, and costs chargeable pursuant to this policy.

## SECTION 6
### Reports and Records

1.      Legal counsel and the Fund Office shall each prepare a delinquency report to be presented at each Board of Trustees meeting. The report shall show all Employers that are delinquent. The determination of the Board with respect to action on such Contributions, and the specific bases therefore, shall be recorded in the minutes.

2.      The Fund Office shall maintain a file of currently effective collective bargaining agreements and other agreements detailing the basis upon which Employers are obligated to make Contributions to the Fund.

## SECTION 7
### Effective Date

        The revisions to this Policy, which originally was adopted May 1, 1994, shall be effective March 1, 2007.

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

Service Employees International Union National
Industry Pension Fund, et al.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    DC
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Richard C. Welch
Mooney, Green, Baker & Saindon, P.C.
1920 L. St. NW, Suite 400
Washington, DC 20036
(202)783-0010

## DEFENDANTS

Trinity Oakland, Inc.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)    Los Angeles
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

● 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government
Defendant

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. *Antitrust*

☐ 410 Antitrust

### ○ B. *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

### ○ D. *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

### ○ E. *General Civil (Other)*    OR    ○ F. *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
defendant
☐ 871 IRS-Third Party 26
USC  7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC
3410
☐ 900 Appeal of fee determination
under equal access to Justice
☐ 950 Constitutionality of State
Statutes
☐ 890 Other Statutory Actions (if
not administrative agency
review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ⊙ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Co** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. J

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Sections 502(a)(3),(d)(1) and Section 515 of ERISA, and Section 301(a) of LMRA to collect unpaid pension contributions

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ 4,804.89 | Check YES only if demanded in c |
|---|---|---|---|
| | | JURY DEMAND: | YES ☐  NO ☐ |

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE  4/24/2008    SIGNATURE OF ATTORNEY OF RECORD  _[signature]_

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Se II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found und the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Cler Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.